UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BERTHA ARANDA GLATT,

          Plaintiff,

    v.

CITY OF PASCO, *et al.*,

          Defendants.

No.  4:16-CV-05108-LRS

**PARTIAL CONSENT DECREE**

## PARTIAL CONSENT DECREE

A Complaint has been filed by the above Plaintiff alleging that the current at-large method of electing members of the Pasco City Council violates Section 2 of the Federal Voting Right Act by diluting the electoral power of Pasco's Latino voters and thereby depriving Latinos of an opportunity to fully participate in the political process and to elect candidates of their choice to the Pasco City Council.

## FACTUAL STIPULATION – LIABILITY

The above-named Plaintiff and Defendants stipulate and agree as follows:

### Background

1.    Defendant City of Pasco, Washington, is a municipal corporation organized under the laws of the State of Washington as an optional-code city subject to Chapter 35A of the Revised Code of Washington. Defendants Rebecca

PARTIAL CONSENT DECREE - 1

Francik, Robert Hoffmann, Thomas Larsen, Saul Martinez, Matthew Watkins, and Al Yenney, are current members of the Pasco City Council. The City Council has statutory authority to set voting districts subject to the state law. The City Councilmembers are each sued in their official capacity only.

2.    The Pasco City Council consists of seven (7) City Councilmembers serving staggered four-year terms. The next municipal election will be in November 2017, at which time four (4) seats on the Pasco City Council will be up for election.

3.    Five (5) City Councilmembers are currently nominated in a non-partisan, top-two primary in five (5) territorial election districts. For territorial election districts, only a resident of that voting district may be a candidate for, or hold office as, a Councilmember of that district, and only voters of the district may vote at the primary election to nominate candidates for the City Councilmember for that district. Candidates for the two (2) at-large City Council positions are determined at the primary election in a non-partisan, top-two primary by residents of the entire City of Pasco.

4.    During the general election, voters of the entire City vote to elect a Councilmember for each of the respective territorial election districts, as well as the two at-large Council positions (*i.e.*, all Councilmembers are elected on an at-large basis).

5.      The City has, within the last legislative session, sought a change to the State law to allow for district-based voting. In the absence of a change in the State law, the City, and in anticipation of the 2015 municipal election cycle, sought to amend Pasco Municipal Code (PMC) 1.10.010 to provide for district-based elections. The City requested that the Franklin County Auditor implement district-based voting. The Auditor responded to Pasco's request in a letter dated April 17, 2015, claiming that because implementing a district-based election system would violate Wash. Rev. Code 35A.12.180, the Auditor was unable to conduct an election under Pasco's proposed district-based election system.

6.      On May 4, 2015, the Pasco City Council enacted Resolution No. 3635 declaring its intent to pursue a district-based election system for City Councilmembers, and further declaring its continuing intent to provide equal voting opportunities for all of its citizens, and to provide equitable and proportional representation.

7.      At the behest of the City of Pasco, Washington State Senator Pam Roach submitted a request to the Washington State Attorney General regarding the authority of cities subject to RCW 35A.12.180 (which includes the City of Pasco) to change their own election systems. On January 28, 2016, the Washington State Attorney General rendered an Opinion which noted that:

> Thus, RCW 35A.12.180 specifically denies to code cities the authority to restrict voting by ward at the general election. Therefore, a local ordinance that provided for general elections by ward would conflict with RCW 35A.12.180 and be preempted by state law. (Attorney

PARTIAL CONSENT DECREE - 3

General Opinion at pg. 5.)  In sum, Code cities in Washington that believe they may be in violation of the VRA face difficult decisions and potential legal risk regardless of what course they choose. (Attorney General Opinion at pg. 10).

## **Violation of Section 2 of the Federal Voting Rights Act**

8.    This action is for the enforcement of Section 2 of the Federal Voting Rights Act, which provides in part as follows:

> (a)    No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in Section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

> (b)    A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

9.    The Federal Voting Rights Act is designed to "help effectuate the Fifteenth Amendment's guarantee that no citizen's right to vote shall be denied or abridged . . . on account of race, color, or previous condition of servitude." *Voinovich v. Quilter*, 507 U.S. 146, 152 (1993).

PARTIAL CONSENT DECREE - 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10.    A violation of the Voting Rights Act occurs when, based upon the totality of the circumstances, the challenged electoral process is "not equally open to participation by members of a [racial minority group] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 42 U.S.C. § 1973(b).

11.    The City of Pasco is an optional municipal code city subject to Wash. Rev. Code 35A.12.180, the pertinent portion of which states as follow:

> Wards shall be redrawn as provided in chapter 29.76 RCW. Wards shall be used as follows: (1) Only a resident of the ward may be a candidate for, or hold office as, a councilmember of the ward; and (2) only voters of the ward may vote at a primary to nominate candidates for a councilmember of the ward. Voters of the entire city may vote at the general election to elect a councilmember of a ward, unless the city had prior to January 1, 1994, limited the voting in the general election for any or all council positions to only voters residing within the ward associated with the council positions. If a city had so limited the voting in the general election to only voters residing within the ward, then the city shall be authorized to continue to do so.

12.    Due to voting trends, the result of the statutorily mandated at-large election has been non-Latino dominance in electing City Council members. Pasco's large Latino population is sufficiently numerous and compact to form a majority in at least one single-member district, is political cohesive, and the non-Latino majority votes sufficiently as a block to defeat a Latino preferred candidate. *See Thornburg v. Gingles*, 478 U.S. 30 (1986).

13.    As this court held in *Montes v. Yakima*, "state law must sometimes yield to afford an effective remedy under the Voting Rights Act. The Supremacy

PARTIAL CONSENT DECREE - 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clause requires that state law be abrogated where doing so is necessary to remedy a violation of the Voting Rights Act." *Montes v. Yakima*, No. 12-CV-3108-TOR, Final Injunction and Remedial Districting Plan, ECF No. 143 (Feb. 17, 2015) (citing *Arizona v. Inter Tribal Council of Ariz. Inc.*, 133 S. Ct. 2247, 2256 (2013)). "Federal legislation so far as it extends and conflicts with the regulations of the State, necessarily supersedes them." *Ex Parte Siebold*, 100 U.S. 371, 384 (1879). Thus, "[i]n remedial situations under Section 2 where state laws are necessarily abrogated, the Supremacy Clause appropriately works to suspend those laws because they are an unavoidable obstacle to the vindication of the federal right." *Large v. Fremont Cnty.*, 670 F.3d 1133, 1145 (10th Cir. 2012).

14.    As such, a number of federal courts have invalidated at-large election systems and approved or given full deference to remedial plans that include single-member districts, even when the adoption of such a plan conflicted with state law. See, e.g., United States vs. City of Euclid, 580 F. Supp. 2d 584 (E.D. Ohio 2008); Tallahassee Branch of NAACP v. Leon County, 827 F.2d 1436, 1437 (11th Cir. 1987), cert. denied, 488 U.S. 960; United States v. Osceola County, 474 F. Supp. 2d 1254 (M.D. Fla 2006). Similarly here, this Court is specifically authorized to order an election system that conflicts with state law in order to fully remedy the City's Voting Rights Act violation.

15.    Since the implementation of Pasco's current election system in 1978, the population of the City of Pasco has grown dramatically. During that period,

PARTIAL CONSENT DECREE - 6

there has been a substantial increase in the number of Latino residents. Today, Latino residents are estimated to be approximately half of the City's population. The Latino population in the City of Pasco is sufficiently numerous and geographically compact to constitute a majority of the citizen voting age population in at least one election district.

16.    Latinos in the City of Pasco are a politically unified group that votes cohesively as a bloc. In contests between Latino and non-Latino candidates for the City Council, statistical analyses show that Latino voters consistently vote for Latino candidates.

17.    The majority of voters in Pasco are white and have historically engaged in bloc voting favoring non-Latino candidates.

18.    There is a pattern of racially polarized voting in the City of Pasco City Council elections. The voting patterns and the presently mandated at-large general election of all City Council candidates make it very difficult for the Latino community to elect candidates of their choice.  Although other minority candidates have been elected to the City Council, as a result of racially-polarized bloc voting, no Latino candidate has ever won an opposed election to the Pasco City Council. The first Latina to serve on the City Council was Luisa Torres. She was appointed to the Council in 1989. Luisa ran for election in 1989 but was defeated by a non-Latino candidate.  The only other Latino to serve on the City Council was also first

appointed to the City Council, Saul Martinez.  He subsequently ran unopposed, which enabled him to retain his seat.

19.    In 2015, six Latinos ran for two positions on City Council. Despite strong support of Latino voters, the two Latinas who survived the primary election were both defeated in the November 2015 general election.

20.    While there is no evidence of any discriminatory motive or intent by the non-Latino population in exercising their own rights to vote, such intent is not necessary to a violation of Section 2 of the Voting Rights Act. There is no evidence that non-Latinos are deliberately conspiring to outvote Latinos.

21.    The Latino population in the City of Pasco is sufficiently numerous and geographically compact to constitute a majority of the citizen voting age population in at least one election district.

22.    Under the Senate Factors or "the totality of the circumstances" analysis, there is sufficient evidence of disparities to show inequality in opportunities between the white and Latino populations and that the existing at-large election system for the Pasco City Council has excluded Latinos from meaningfully participating in the political process and diluted their vote such that Latinos are unable to elect candidates of their choice to the City Council.  Thus, the election system by which Pasco elects its City Councilmembers, which is mandated by state statute, and voting trends in Pasco results in a violation Section 2 of the Voting Rights Act.

PARTIAL CONSENT DECREE - 8

23.    It is in the best interest of the residents of the City of Pasco to enter into this Partial Consent Decree, thus avoiding protracted, costly, and potentially divisive litigation. Defendants have the authority to settle litigation in good faith for further expenditure of public funds and defense thereof is not likely to be in the interest of the public.

NOW, THEREFORE, based upon the stipulated evidence presented in this case and as memorialized above, IT IS HEREBY, ORDERED, ADJUDGED, AND DECREED that:

1.    This Court has jurisdiction over these actions pursuant to 42 U.S.C. 1973 and 28 U.S.C. 1345.

2.    Under the Supremacy Clause of Article VI of the Constitution of the United States this Court has the power to impose a remedy otherwise contrary to applicable state statutes. This Court also has the authority to approve a settlement or issue a consent decree that abrogates or modifies state law if doing so is necessary to remedy a violation of Section 2 of the Voting Rights Act. *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995).

3.    Wash. Rev. Code 35A.12.180 mandates that Pasco elect its City Councilmembers in at-large elections. Due to voting trends in Pasco, the City's current election system dilutes the Latino population's voting power in violation of Section 2 of the Voting Rights Act.

PARTIAL CONSENT DECREE - 9

4.      In order to remedy the City of Pasco's Section 2 violation, the City must adopt a new election system. Implementation of the new election system will necessarily abrogate Washington State law, but must do so only as much as necessary to remedy the Section 2 violation. *Large*, 670 F.3d at 1145 ("[I]n remedial situations under Section 2 where State laws are necessarily abrogated, the supremacy clause appropriately works to suspend those laws because they are an *unavoidable obstacle* to the vindication of the Federal right.").

5.      Defendants admit that, due to voting trends, Pasco's current election system results in unlawful dilution of the Latino population's vote in violation of Section 2 of the Voting Rights Act. As such, a new election system must be imposed. Pasco does not have the authority to affirmatively change its election system because Wash. Rev. Code 35A.12.180 bars such alterations. However, this Court has the authority to impose an election system that remedies that violation.

6.      The Court reviewed the Parties' stipulation of facts as reflected in this Partial Consent Decree, and finds that the stipulations are sufficient to support finding that Pasco's current City Council election system unlawfully dilutes the Latino population's vote in violation of Section 2 of the  Voting Rights Act, 42 U.S.C. § 1973.

7.      Except as inconsistent with or specifically altered by the terms of this Partial Consent Decree or any subsequent orders from this Court, all state laws shall continue to govern elections for the City Council of the City of Pasco.

PARTIAL CONSENT DECREE - 10

8.      Defendants, and their officers, agents, and successors in office, and all persons acting in concert with them, are enjoined from administering, implementing, or conducting future elections for the Pasco City Council under the current at-large election method or any other election method that violates Section 2 of the Voting Rights Act.

9.      The Court reserves jurisdiction of this matter to determine and impose the appropriate election system to remedy the current violation of Section 2 of the Voting Rights Act.

10.     It is further ordered, that to provide for effective opportunities for full participation in the 2017 municipal election cycle, the Parties shall, in good faith efforts, meet and confer no later than September 15, 2016 to determine whether the Parties can agree upon a remedial option for compliance with Section 2 of the Voting Rights Act. If the Parties cannot reach agreement, the Parties shall each submit their proposed remedial districting plans to the Court on or before October 15, 2016. The Parties shall respond to the proposed remedial plans on or before November 1, 2016. The Parties shall present a reply regarding the proposed remedial plans by November 15, 2016. A hearing before this Court on the proposed remedial redistricting plans may be set by the Court.

11.     No attorney fees or costs are awarded for this liability phase of the case or work performed by Plaintiff prior to the filing of the Complaint; however,

PARTIAL CONSENT DECREE -
11

the Court reserves the award of reasonable attorney fees and costs for the remedial

phase of this case.

ENTERED THIS 2nd day of September, 2016.


**Lonny R. Suko**

_____

LONNY R. SUKO
SENIOR U.S. DISTRICT COURT JUDGE

Presented by:

/s/Leland B. Kerr
_____
Leland B. Kerr, WSBA No. 6059
lkerr@kerrlawgroup.net
KERR LAW GROUP
7025 W. Grandridge Blvd., Suite A
Kennewick, Washington 99336
Telephone:  (509) 735-1542
Facsimile:  (509) 735-0506

/s/John A. Safarli
_____
John A. Safarli, WSBA No. 44056
jsafarli@floyd-ringer.com
FLOYD, PFLUEGER & RINGER, P.S.
200 W. Thomas Street, Suite 500
Seattle, Washington 98119
Telephone: (206) 441-4455

*Attorneys for Defendants, City of Pasco et al.*

/s/Emily Chiang
_____
Emily Chiang, WSBA No. 50517
echiang@aclu-wa.org
La Rond Baker, WSBA No. 43610
lbaker@aclu-wa.org

PARTIAL CONSENT DECREE -
12

Breanne Schuster, WSBA No. 49993
bschuster@aclu-wa.org
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184

/s/Brendan V. Monahan
_____
Brendan V. Monahan, WSBA No. 22315
bvm@stokeslaw.com
STOKES LAWRENCE VELIKANJE
MOORE & SHORE
120 N. Naches Avenue
Yakima, Washington 98901-2757
Telephone: (509) 853-3000

*Attorneys for Plaintiff, Bertha Aranda Glatt*

PARTIAL CONSENT DECREE -
13