THE HONORABLE LONNY R. SUKO

Emily Chiang, WSBA No. 50517
La Rond Baker, WSBA No. 43610
AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
(206) 624-2184
echiang@aclu-wa.org, lbaker@aclu-wa.org

Brendan V. Monahan, WSBA No. 22315
STOKES LAWRENCE VELIKANJE MOORE & SHORE
120 N. Naches Avenue
Yakima, Washington 98901-2757
(509) 853-3000
Brendan.Monahan@stokeslaw.com

Gregory Landis, WSBA No. 29545
Cristin Kent Aragon, WSBA No. 39224
YARMUTH WILSDON PLLC
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
Telephone: (206) 516-3800
glandis@yarmuth.com, caragon@yarmuth.com

*Attorneys for Plaintiff, Bertha Aranda Glatt*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BERTHA ARANDA GLATT,<br><br>          Plaintiff,<br><br>          v.<br><br>CITY OF PASCO, *et al.*,<br><br>          Defendants. | Case No. 4:16-CV-05108-LRS<br><br>MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED REMEDIAL PLAN |

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

# TABLE OF CONTENTS

I.   INTRODUCTION ...............................................1

II.  BACKGROUND ...............................................2

  A. A Growing Latino Community Has Been Unable to Obtain Representation on the Pasco City Council ...............................................2

  B. Pasco and Plaintiff's Collaborations Aimed at Remedying the Section 2 Violation ...............................................4

III. ARGUMENT ...............................................6

  A. This Court Owes Deference to Defendant's Proposed Remedy Only if That Remedy Provides Full and Complete Relief ...............................................6

  B. This Court Owes No Deference to Defendants' Proposed 6-1 Election Plan Because it Fails to Provide a Full and Complete Remedy to the City's Admitted Section 2 Violation ...............................................8

  C. Plaintiff's Seven Single-Member District Plan is a Full and Effective Remedy of the Section 2 Violation ...............................................11

  D.  The Court Should Immediately and Fully Implement the Remedial Map..14

IV.  CONCLUSION ...............................................17

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - i

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Chapman v. Meier,*
 420 U.S. 1 (1975)................................................................ 8, 12

4

5

*Citizens for Good Government v. City of Quitman, Mississippi,*
 148 F.3d 472 (5th Cir. 1998) ...............................................12

6

*Clark v. Roemer,*
 777 F. Supp. 471 (M.D. La. 1991)........................................15

7

8

*Connor v. Finch,*
 431 U.S. 407 (1977)..............................................................12

9

*Desena v. Maine,*
 793 F. Supp. 2d 456 (D. Me. 2011) .....................................14

10

11

*Dickinson v. Indiana State Election Board,*
 933 F.2d 497 (7th Cir. 1991) .................................................7

12

*Dillard v. Crenshaw County,*
 649 F. Supp. 289 (M.D. Ala. 1986) ......................................11

13

14

*Dillard v. Crenshaw County, Alabama,*
 831 F.2d 246 (11th Cir. 1987) ...............................................6

15

16

*East Carroll Parish School Board v. Marshall,*
 424 U.S. 636 (1976)..............................................................12

17

*Garza v. County of Los Angeles,*
 918 F.2d 763 (9th Cir. 1990) .................................................7

18

19

*Harvell v. Blytheville School District No. 5,*
 126 F.3d 1038 (8th Cir. 1997) ......................................... 7, 11

20

*Johnson v. De Grandy,*
 512 U.S. 991 (1994)......................................................... 7, 13

21

22

*Large v. Fremont County,*
 670 F.3d 1133 (10th Cir. 2012) ....................................... 7, 11

23

24

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

*League of United Latin American Citizens, Council No. 4836 v. Midland Independent School District*,
   648 F. Supp. 596 (W.D. Tex. 1986) ...................................................................11

*Mahan v. Howell*,
   410 U.S. 315 (1973)..........................................................................................12

*Montes v. City of Yakima*,
   No. 12-cv-3108, 2015 WL 11120964 (E.D. Wash., Feb. 17, 2015) .......... passim

*Neal v. Harris*,
   837 F.2d 632 (4th Cir. 1987) ...........................................................................15

*United States v. Brown*,
   561 F.3d 420 (5th Cir. 2009) .............................................................................7

*United States v. Dallas County Commission, Dallas County, Alabama*,
   850 F.2d 1433 (11th Cir. 1988) .......................................................................11

*United States v. Osceola County, Florida.*,
   474 F. Supp. 2d 1254 (M.D. Fla. 2006).............................................................11

*United States v. Paradise*,
   480 U.S. 149 (1987).............................................................................................6

*Wallace v. House*,
   377 F. Supp. 1192 (W.D. La. 1974) .................................................................15

*Williams v. City of Texarkana, Arkansas*,
   861 F. Supp. 771 (W.D. Ark. 1993) .................................................................12

*Wise v. Lipscomb*,
   437 U.S. 535 (1978)..........................................................................................12

**Statutes**

42 U.S.C. §1973 ........................................................................................ passim

Wash. Rev. Code § 35.18.020(2)........................................................................16

Wash. Rev. Code § 35A.02.050..........................................................................17

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

**Other Authorities**

2

Mike Faulk,
*New Yakima City Council Finalized with Mendez Win*, Yakima Herald (Nov. 5, 2015), http://www.yakimaherald.com/news/elections/new-yakima-city-council-finalized-with-mendez-win/article_4c4b3dc2-8452-11e5-a5bd-9b2fd02199ca.html ................................................................................13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

# I.    INTRODUCTION

The City of Pasco (the "City") deserves credit for recognizing that its at-large election system "has excluded Latinos from meaningfully participating in the political process and diluted their vote such that Latinos are unable to elect candidates of their choice to the City Council." Partial Consent Decree, at 9 (Dkt. 16). After unsuccessfully attempting to change Washington state law to allow the City to enact an election system based on single-member districts and following the filing of the Complaint by Plaintiff Bertha Aranda Glatt ("Plaintiff"), the City agreed to a Partial Consent Decree in which the Court confirmed that Pasco's election system "unlawfully dilutes the Latino population's vote in violation of Section 2 of the Voting Rights Act." *Id*. at 11.  42 U.S.C. § 1973.

The Court enjoined the City from "administering, implementing, or conducting future elections for the Pasco City Council under the current at-large election method or any other election method that violates Section 2 of the Voting Rights Act," and ordered the parties to attempt to agree on an appropriate remedy for the violation. Despite their efforts, the parties have been unable to agree on such a remedy. *Id.*  Therefore, Plaintiff respectfully requests the Court adopt her proposed remedy, as set forth herein.

Plaintiff's proposed remedial plan provides the lawfully mandated full, fair, and prompt relief necessary to remedy the finding of the Voting Rights Act

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 1

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

violation on the part of the City.  As described below, Plaintiff proposes a seven single-member district election plan where three of the districts would be majority Latino and one district would be a Latino "influence district," providing the Latino community rough proportionality in representation on the City Council.  All seven seats under this plan would be up for election in the City's 2017 election cycle. Plaintiff's proposed remedy comports with traditional districting requirements including compactness, one-person-one-vote, contiguity, and respects communities of interest.  It is, moreover, wholly consistent with this Court's previous ruling in *Montes v. City of Yakima*, No. 12-cv-3108, 2015 WL 11120964 (E.D. Wash., Feb. 17, 2015).  Without the full and prompt relief afforded by this remedy, the Latino community in Pasco will continue to suffer the ill effects of vote dilution Section 2 was designed precisely to prohibit.

## II.      BACKGROUND

### A.      A Growing Latino Community Has Been Unable to Obtain Representation on the Pasco City Council

Despite significant demographic shifts in the past three decades, which have seen Pasco's Latino population grow to 54.02% and 30.02% Latino citizen voting age population ("LCVAP"), no Latino has ever won a contested election for a seat

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

on the City Council.[1]  Cooper Decl. at ¶43; Engstrom Decl. at ¶¶17-24, 30; Dkt. 16 at 6.  Not even Latinos who ran with the benefit of incumbency, after having been appointed to their seats, have won a contested election.[2]  Dkt. 16 at 7-8.  This deficiency is the direct result of the City's use of at-large elections combined with racially polarized voting, which the City has admitted constitutes a violation of Section 2 of the Voting Rights Act.

The lack of meaningful representation on the City Council is not the result of disinterest on the part of the Latino community, which has repeatedly produced and supported candidates for office.  Engstrom Decl. at ¶¶17-24.  Rather, as reflected in the most recent election in 2015, Latino candidates for City Council lose because of racially polarized voting in contests for at-large seats that require a majority of the city voters' approval to win.  *See generally* Engstrom Decl.  This dynamic exists because both Latino and white voters in Pasco are politically

---

[1] Citizen voting age population is defined as residents of a jurisdiction that are legally able to vote, *i.e.* are citizens of voting age.  In Pasco, the Latino population is larger than the Latino Citizen Voting Age Population ("LCVAP") because the Latino population is fairly young, comprising approximately 65.8% of the under-eighteen population.  Cooper Decl. at 4, Fig. 1.

[2] Luisa Torres was appointed to the Pasco City Council in 1989.  Ms. Torres "ran for election in 1989 but was defeated by a non-Latino candidate."  Dkt. 16 at 7.

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 3

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

unified and vote cohesively as blocs—and because "[t]he majority of voters in Pasco are white and have historically engaged in bloc voting favoring non-Latino candidates" or Latino candidates of choice.  Dkt. 16 at 7; *see generally* Engstrom Decl.  These two factors—bloc voting that is racially polarized, and an election system that requires a majority of the City's voters to win a seat on the Council—make it statistically impossible for a Latino candidate or Latino candidate of choice to be elected to the Pasco City Council in a contested election.  Dkt. 16 at 7; Engstrom Decl. at ¶¶17-24, 30.

The impact on the Latino community of not having meaningful representation on the City Council in the form of candidates of their choice is significant.  As the City concedes, under "'the totality of the circumstances' analysis, there is sufficient evidence of disparities to show inequality in opportunities between the white and Latino populations and that the existing at-large election system has excluded Latinos from meaningfully participating in the political process," resulting in a violation of  Section 2 of the Voting Rights Act.  Dkt. 16 at 8.

**B.    Pasco and Plaintiff's Collaborations Aimed at Remedying the Section 2 Violation**

In hopes of finding common ground to remedy the Section 2 violation in a timely manner and provide a complete remedy that protects the rights of the Latino community, Plaintiff consulted with the City of Pasco for almost six (6) months

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

before filing this lawsuit. *See* Baker Decl. Ex. A. The City's violation of federal law was sufficiently clear that the City agreed to enter into a partial consent decree, which the Court entered on September 2, 2016. Dkt. 16.

Plaintiff filed this lawsuit against the City on August 4, 2016. Dkt. 1. Less than a month later, after a series of negotiations, the Court entered a Partial Consent Decree on September 2, 2016 to avoid "protracted, costly, and potentially divisive litigation" and because the "defense [of this matter was] not likely . . . in the interest of the public." Dkt. 16 at 9. In the Partial Consent Decree, the City admitted its current election system violated Section 2 of the Voting Rights Act. Additionally, the parties agreed to "in good faith efforts, meet and confer no later than September 15, 2016, to determine whether the Parties can agree upon a remedial option for Compliance with Section 2 of the Voting Rights Act." *Id.* at 11. If the parties could not reach agreement, the Partial Consent Decree ordered them to file initial briefs with the Court on or before October 15, 2016 regarding their respective proposed remedial plans. *Id.*

On September 15, the Parties met in person to discuss possible remedial options, but attorneys for the City were unable to commit the City to any particular remedial plan. Plaintiff's counsel described their proposed remedy—full and immediate implementation of a seven single member district plan—and offered to provide factual and legal points supporting that remedy for the benefit of the

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

Council deliberations scheduled to take place shortly after the meeting. Baker

Decl. Ex. B. On September 19, 2016, the Council voted 5-1 in favor of a "hybrid"

election system comprised of six single-member districts and one at-large seat.

### III. ARGUMENT

**A.** **This Court Owes Deference to Defendant's Proposed Remedy Only if that Remedy Provides Full and Complete Relief**

The Supreme Court has directed district courts to fashion remedies for

discriminatory practices that completely "eliminate the discriminatory effects of

the past as well as bar like discrimination in the future." *United States v. Paradise*,

480 U.S. 149, 183-84 (1987). As such, when a Section 2 violation has been

established, "[t]he court should exercise its traditional equitable powers to fashion

the relief so that it completely remedies the prior dilution of minority voting

strength and fully provides equal opportunity for minority citizens to participate

and to elect candidates of their choice." *Dillard v. Crenshaw Cnty., Ala.*, 831 F.2d

246, 250 (11th Cir. 1987) (internal quotation marks omitted). Further, rough

proportionality is relevant when determining "'whether members of a minority

group have less opportunity than other members of the electorate to participate in

the political process and to elect representatives of their choice.'" *Montes*, 2015

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 6

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

WL 11120964, at *8 (quoting *Johnson v. De Grandy*, 512 U.S. 991, 1000 (1994)).[3]

To remedy a Section 2 violation, the district court "must, wherever

3

practicable, afford the jurisdiction an opportunity to remedy the violation first, . . .

4

5

with deference afforded the jurisdiction's plan if it provides a full, legally

6

acceptable remedy . . . .  But if the jurisdiction fails to remedy completely the

7

violation or if a proposed remedial plan itself constitutes a § 2 violation, the court

8

must itself take measures to remedy the violation."  *Dickinson v. Ind. State*

9

*Election Bd.*, 933 F.2d 497, 501 n.5 (7th Cir. 1991) (citation and quotation marks

10

omitted).  Because a full remedy that eliminates all discriminatory effects must be

11

imposed after a finding of a Section 2 violation, a district court "need not defer to a

12

state-proposed remedial plan . . . if the plan does not completely remedy the

13

violation or if the plan itself violates section 2 of the Act."  *Harvell v. Blytheville*

14

*Sch. Dist. No. 5*, 126 F.3d 1038, 1040 (8th Cir. 1997).  *See also Large v. Fremont*

15

16

*Cnty.*, 670 F.3d 1133 (10th Cir. 2012); *Garza v. Cnty. of Los Angeles*, 918 F.2d

17

763, 776 (9th Cir. 1990); *United States v. Brown*, 561 F.3d 420, 435 (5th Cir.

18

2009); *Dickinson*, 933 F.2d at 501 (7th Cir. 1991).

19

---

[3] The Supreme Court has noted that rough proportionality is relevant even though

20

21

an acceptable remedy "need not maximize the electoral opportunities of a minority

22

group."  *Johnson*, 512 U.S. at 1017.

23

24

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 7

**B.**    **This Court Owes No Deference to Defendants' Proposed 6-1 Election Plan Because it Fails to Provide a Full and Complete Remedy to the City's Admitted Section 2 Violation**

The City Council voted on September 19, 2016 to implement a 6-1 remedial election plan.  Under this plan, six (6) City Council members would be elected via single-member districts and one City Council member would be elected at-large. Baker Decl. Ex. C.  In the City's proposed 6-1 system there would be three (3) majority Latino districts.[4]  *Id.*  Such a plan would not provide a full and complete remedy of the City's admitted Section 2 violation because the same racially polarized voting and resultant discriminatory impact that created the Section 2 violation—when all seven City Council seats were elected at-large—remains a problem even when just one seat is elected at large.  *See* Engstrom Decl. at ¶30; Cooper Decl. at ¶¶56-63.

"[T]he Supreme Court has directed the use of single-member districts [to remedy Section 2 violations unless there are compelling reasons not to use them." *Montes*, 2015 WL 11120964, at *9 (citing *Chapman v. Meier*, 420 U.S. 1, 27 (1975)).  It has done so because an at-large election system effectively "converts

---

[4] As of the filing of this brief, Defendants have not informed Plaintiff whether the City will advocate for full implementation by placing all seven seats for the City Council up for election in 2017, or instead propose staggered implementation where only a portion of the City Council seats will be up for election in 2017.

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 8

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

each of the seven city council seats to a city-wide majority-takes-all election, has the effect of denying Latinos the equal opportunity to participate in the political process and to elect candidates of their choice." *Id.* at *2.  Because at-large elections that require a majority of votes to win will dilute a minority population's vote where there is substantial racially polarized voting (as the City concedes exists in Pasco), vote dilution claims are typically remedied by replacing <u>all</u> at-large elections with a single-member districting plan that gives minority voters a majority in one or more districts.  Indeed, this plan is precisely what this Court imposed in Yakima just last year.  *See id.* at *9-10.

The fact that Defendants have proposed a plan that incorporates only one at-large seat as compared to four, three, or two at-large seats does not mean that the plan is a full and complete remedy of the Section 2 violation.  Neither is the City saved by the fact that its plan includes three majority Latino districts.  The plan remains an inadequate Section 2 remedy because the use of any at-large seat in Pasco, where significant racially polarized voting occurs, will preclude Latino voters from meaningful participation in electing that seat.  Where, as in Pasco, at-large elections accompanied by racially polarized voting have already been found to violate Section 2, the at-large elections should be replaced completely—not just partially—with district-based elections.

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 9

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1      The at-large seat in Defendants' proposed 6-1 plan continues the

2  discriminatory impact of the previous unlawful plan.  The City of Pasco has

3  conceded that "[t]he majority of voters in Pasco are white and have historically

4  engaged in bloc voting favoring non-Latino candidates." Dkt. 16 at 7.  The City

5  has also admitted that this "pattern of racially polarized voting" has made it "very

6  difficult for the Latino community to elect candidates of their choice." Dkt. 16 at

7  7.  Defendants' proposed 6-1 plan is would continue this pattern for the remaining

8  at-large seat.

9

10     Based on the City's admissions, which include a finding of racially polarized

11 voting, the maintenance of any at-large seat will continue the dilution of the Latino

12 vote.[5]  Engstrom Decl. at ¶30.  This continued vote dilution and the concomitant

13 discriminatory abridgement of the Latino vote cannot be deemed to constitute a

14 full remedy of the Section 2 violation underpinning these proceedings and admitted

15 to by Defendants.

16

17 _____

[5] Racially polarized voting is particularly problematic in jurisdictions that utilize a

18 "place system" (as Pasco does and as Washington State law requires) where "seats

19 on the city council are elected separately, in combination with the majority vote

20 rule for general elections that results from the 'top two' primary[.]" Engstrom

21 Decl. at ¶¶7-9.  The at-large system utilized by the City "permits a majority group

22 to control the outcome of the election in each [at-large] place." *Id.* at ¶27.

23

24

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 10

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

**C.    Plaintiff's Seven Single-Member District Plan is a Full and Effective Remedy of the Section 2 Violation**

2

3        In the absence of a valid legislative plan, the court must impose a plan that

4   meets constitutional and Voting Rights Act standards.[6] *Montes*, 2015 WL

5   11120964, at *9.  In determining the appropriate remedial plan, this Court should

6

7   [6] When a jurisdiction's plan fails to appropriately and adequately remedy a Section

8   2 violation, courts have often adopted Plaintiff's proposed remedial plans as the

9   appropriate remedy in Voting Rights Act cases. *See, e.g.*, *Large v. Fremont Cnty.,*

10  *Wyo.*, 670 F.3d 1133, 1136, 1148 (10th Cir. 2012) (affirming district court's

11  "reject[ion] [of] the Board's proposal in favor of a plan with five single-member

12  districts, as initially proposed by the Appellees"); *Harvell*, 126 F.3d at 1042

13  (affirming district court's adoption of plaintiff's plan); *United States v. Dallas*

14  *Cnty. Comm'n, Dallas Cnty., Ala.*, 850 F.2d 1433, 1443 (11th Cir. 1988) (directing

15  district court to adopt plaintiffs' plan); *United States v. Osceola Cnty. Fla.*, 474 F.

16  Supp. 2d 1254, 1256 (M.D. Fla. 2006) (approving "United States Proposed

17  Remedial Plan 2"); *Dillard v. Crenshaw Cnty.*, 649 F. Supp. 289, 298 (M.D. Ala.

18  1986) (requiring implementation of plaintiffs' plan); *see also League of United*

19  *Latin Am. Citizens, Council No. 4836 v. Midland Indep. Sch. Dist.*, 648 F. Supp.

20  596, 598 (W.D. Tex. 1986) (adopting two minority districts as drawn by plaintiffs

21  and allowing defendants "to draw the remaining single-member district lines").

22

23

24

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 11

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

follow the "longstanding general rule that single-member districts are to be used in judicially crafted redistricting plans." *Citizens for Good Gov't v. City of Quitman, Miss.*, 148 F.3d 472, 476 (5th Cir. 1998); *see also Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) ("[A] court-drawn plan should prefer single-member districts over multimember districts, absent persuasive justification to the contrary.").

Any other remedies—including hybrid election systems of the type the City proposes here—are disfavored: "absent unusual circumstances, 'single member districts are the preferred remedy where a violation of voting rights has been found.'" *Williams v. City of Texarkana, Ark.*, 861 F. Supp. 771, 772 (W.D. Ark. 1993) (citing *East Carroll Parish Sch. Bd. v. Marshall*, 424 U.S. 636, 639 (1976)); *Chapman*, 420 U.S. at 2).

This long-standing practice stems from the recognition that the "practice of multimember districting can contribute to voter confusion, make legislative representatives more remote from their constituents, and tend to submerge electoral minorities and overrepresent electoral majorities." *Connor v. Finch*, 431 U.S. 407, 415 (1977). Unless the Court can articulate a "singular combination of unique factors" that justifies abandonment of this clear preference, *Mahan v. Howell*, 410 U.S. 315, 333 (1973), the Court should impose the single-member districts requested herein.

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 12

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1    Plaintiff's Proposed Remedial Plan provides a full and complete remedy to

2    the City of Pasco's Voting Rights Act violation and is wholly consistent with

3    existing precedent, including that which stems from this Court's previous rulings

4    on Section 2 cases.  *See* Cooper Decl. Ex. C-1, C-3.  Like the plan adopted by the

5    Court in *Montes*, it requires the immediate (as opposed to staggered)

6    implementation of seven single-member districts.  *See Montes*, 2015 WL

7    11120964, at *10.

8    Plaintiff's proposed plan provides three majority Latino districts and one

9    "influence district" where Latinos will have the opportunity to elect representatives

10    of their choice, consistent with their share of the Pasco voting population and

11    Supreme Court precedent governing rough proportionality.[7]  *Johnson*, 512 U.S. at

12    1000 (electoral scheme comports with Section 2 "where, in spite of continuing

13    ────────────────

14    [7] An influence district is one in which Latinos (or other minorities) are not a

15    majority of all voters, but have sufficient voting strength to occasionally affect the

16    outcome of the election in coalition with other voters. For example, in the 2014

17    elections in the City of Yakima, voters in District 3 (25.2% LCVAP) elected a

18    Latina candidate.  Cooper Decl. at ¶¶42-47.  *See* Mike Faulk*, New Yakima City

19    Council Finalized with Mendez Win*, Yakima Herald (Nov. 5, 2015),

20    http://www.yakimaherald.com/news/elections/new-yakima-city-council-finalized-

21    with-mendez-win/article_4c4b3dc2-8452-11e5-a5bd-9b2fd02199ca.html.

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 13

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

discrimination and racial bloc voting, minority voters form effective voting majorities in a number of districts roughly proportional to the minority voters' respective shares in the voting-age population."). Critically, Plaintiff's remedial plan does not retain any at-large seats and therefore fully ends the dilutive effect on Latino vote power of racially polarized voting in at-large elections in Pasco. Finally, Plaintiff's remedial plan also retains the flexibility necessary to ensure that the Latino community is not shut out of any election for a seat on the City Council for the foreseeable future and to respond to upcoming demographic shifts in the City.[8]

**D.      The Court Should Immediately and Fully Implement the Remedial Map**

Plaintiff respectfully submits that the Court should implement the entire remedial map in advance of the upcoming 2017 City Council election. Specifically, the Court should order that all seven (7) City Council positions will appear on the 2017 ballot. An effective remedy requires prompt implementation. *See Desena v. Maine*, 793 F. Supp. 2d 456, 462 (D. Me. 2011) ("Constitutional violations, once apparent, should not be permitted to fester; they should be cured at

---

[8] Plaintiff's proposed plan also complies with long-standing traditional redistricting principles governing judicial districting plans, including the requirement of compactness and minimization of total population deviation. Cooper Decl. at ¶¶26-55

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 14

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1   the earliest practicable date.").  Further, in cases where there has been a "long-

2   standing Section 2 violation, a broad electoral field only serves to assure that each

3   citizen of voting age has the appropriate opportunity, under the new electoral

4   scheme, to have his or her voice heard now."  *Montes*, 2015 WL 11120964, at *11.

5       In fact, it is not uncommon for courts to order immediate special elections to

6   ensure compliance with Section 2 upon finding a violation.  *See Neal v. Harris*,

7   837 F.2d 632, 634 (4th Cir. 1987) ("The special election . . . is not a distinct

8   remedy.  It is merely a vehicle for the immediate implementation of the remedy

9   provided in the court's decree."); *Clark v. Roemer*, 777 F. Supp. 471, 481 (M.D.

10  La. 1991) ("'[T]his Court and other District Courts have found that where a

11  governing body has been elected under . . . an election scheme such as at-large

12  elections, cancelling out the voting strength of a cognizable portion of the

13  populace, thus denying them access to the political process, prompt new elections

14  are appropriate.'" (quoting *Wallace v. House*, 377 F. Supp. 1192, 1201 (W.D. La.

15  1974)).

16      Full and immediate implementation of a new election system is necessary to

17  remedy the Section 2 violation and to ensure that the Latino population has an

18  equal opportunity to elect representatives of their choice to the City Council.  This

19  need is underscored by the City of Pasco's admission that racially polarized voting

20  has previously locked Latinos out of its at-large elections and this Court's findings

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 15

supporting entry of the Consent Decree.  Immediate implementation is also

supported by this Court's order directing the Parties to submit briefing on a

schedule that would "provide for effective opportunities for full participation in the

2017 municipal election cycle[.]"  Dkt. 16 at 11.  Further, a lengthy process of

implementing single-member districts—or any other type of election system—will

perpetuate the unlawful system at the heart of this litigation.  And if all counsel

seats are not up for election in 2017, Pasco voters will be confronted with a

confusing hodgepodge that will likely require some voters to wait years to elect a

councilmember from their particular geographic district.

The City currently uses "staggered terms" for City Council position.  If

Plaintiff's proposed remedial plan is implemented, Plaintiff has no objection to the

City continuing this electoral practice.  Preservation of a staggered-term system is

simple to accomplish, and how to do so is delineated by state law.  For cities using

a council-manager form of government, such as Pasco, City Council positions are

elected for four-year terms "[e]xcept for the initial staggering of terms."  Wash.

Rev. Code § 35.18.020(2).  That is, the first election run under a new voting

system can utilize terms shorter than four years to accomplish the desired

staggering.

Here, Plaintiff proposes that the Court would accomplish "the initial

staggering of terms" by ordering that all City Council positions be up for election

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 16

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1   in 2017.  Four positions would be elected to a four-year term of office.  Three

2   positions would be elected to a two-year term of office, and would be up for

3   reelection in 2019, this time for a four-year term.  For the sake of administrative

4   ease, Plaintiff's proposed injunction would have odd-numbered and even-

5   numbered positions designated for an initial four-year and two-year term,

6   respectively.  This is consistent with the initial staggering of terms mandated by

7   state law when a reorganization is adopted pursuant to statutory processes.  *See*

8   Wash. Rev. Code § 35A.02.050.

9

## IV.    CONCLUSION

10  For the foregoing reasons Plaintiff respectfully requests that the Court reject

11  Defendants' proposed remedy and adopt Plaintiffs' proposed remedial plan and

12  injunction.

13  DATED this 15th day of October, 2016.

14

15

16          /s/La Rond Baker
            Emily Chiang, WSBA No. 50517
17          echiang@aclu-wa.org
            La Rond Baker, WSBA No. 43610
18          lbaker@aclu-wa.org
            AMERICAN CIVIL LIBERTIES UNION OF
19          WASHINGTON FOUNDATION
            901 Fifth Avenue, Suite 630
20          Seattle, Washington 98164
            Telephone: (206) 624-2184
21

22          /s/Brendan V. Monahan
            Brendan V. Monahan, WSBA No. 22315
23          Brendan.Monahan@stokeslaw.com

24

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 17

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

STOKES LAWRENCE VELIKANJE MOORE & SHORE
120 N. Naches Avenue
Yakima, Washington 98901-2757
Telephone: (509) 853-3000

/s/Gregory Landis
Gregory Landis, WSBA No. 29545
glandis@yarmuth.com
Cristin Kent Aragon, WSBA No. 39224
caragon@yarmuth.com
YARMUTH WILSDON PLLC
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
Telephone: (206) 516-3800

*Attorneys for Plaintiff, Bertha Aranda Glatt*

MOTION FOR ENTRY OF PLAINTIFF'S PROPOSED
REMEDIAL PLAN - 18

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on October 15, 2016, I caused the foregoing document to be:

3

☒    electronically filed with the Clerk of the Court using the CM/ECF system
which will send notification of such filing to the following:

4

5

Emily Chiang            echiang@aclu-wa.org
Brendan V. Monahan      Brendan.Monahan@stokeslaw.com
Cristin Kent Aragon     caragon@yarmuth.com
Gregory Landis          glandis@yarmuth.com
Leland Barrett Kerr     lkerr@kerrlawgroup.net
John A. Safarli         jsafarli@floyd-ringer.com

6

7

8

/s/La Rond Baker

9

La Rond Baker, WSBA No. 43610
lbaker@aclu-wa.org

10

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION

11

901 Fifth Avenue, Suite 630

12

Seattle, Washington 98164
Telephone: (206) 624-2184

13

14

15

16

17

18

19

20

21

22

23

24

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

CERTIFICATE OF SERVICE - 1