# Exhibit B

**EMILY CHIANG**
LEGAL DIRECTOR

**NANCY TALNER**
SENIOR STAFF ATTORNEY

**LA ROND BAKER**
**PRACHI DAVE**
STAFF ATTORNEYS

**MARGARET CHEN**
FLOYD AND DELORES JONES FAMILY STAFF ATTORNEY

**BREANNE SCHUSTER**
VOTING RIGHTS RESEARCHER



**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION**
901 FIFTH AVENUE #630
SEATTLE, WA 98164
T/206.624.2184
F/206.624.2190
WWW.ACLU-WA.ORG

**JEAN ROBINSON**
BOARD PRESIDENT

**KATHLEEN TAYLOR**
EXECUTIVE DIRECTOR

September 16, 2016

Lee Kerr
Kerr Law Group
7025 W. Grandridge Blvd. #A
Kennewick, WA  99336

John Safarli
Floyd, Pfluger, and Ringer
200 West Thomas Street
Suite 500
Seattle, WA  98119

     Re:    Selection of New Election System

Dear Members of the Pasco City Council,

Thank you for your dedication to ensuring that everyone in the City of Pasco has a meaningful opportunity to participate in the City's election system. We applaud the City's on-going efforts to change its unlawful at-large election system and its willingness to work with us to do so. The City now has the opportunity to implement a voting scheme that fully remedies the existing Section 2 violations and we provide the information below to help the City make the correct choice.

We understand that you are deciding between three potential election systems at your September 19, 2016 meeting.  It is the ACLU's position that only a seven single-member district system would fully remedy the City's Voting Rights Act violation and foreclose subsequent litigation.

### **7 Single Member Districts**

- The longstanding general rule is that single-member districts are the best remedy to Section 2 violations.

- Local representation means easy access to candidates.  Candidates who live in a district are more likely to know what the needs of their constituents are than those who are elected at-large.

- In a seven single-member district plan, residents within a particular neighborhood or district often have similar interests that can be best addressed by a representative who lives in that area.

September 16, 2016
Page 2

- The Latino/a community has more of an opportunity to elect a candidate of their choice to a districted seat, even in districts that are not majority Latino/a, because the interests of the Latino/a community may merge with other residents.  This dynamic is not true for at-large seats.

- In a fully district-based election system, candidates only need to campaign in a small geographic region (their district), rather than campaigning across the entire City.  City wide campaigning is more expensive and resource intensive, which could further prevent candidates historically shut out of the political process from running.  City wide campaigning is also typically difficult for Latino/a candidates as there are heavily segregated parts of the town in which it would likely be uncomfortable or problematic for Latino/a candidates to doorbell or actively campaign.

- It may be possible that in the future, if racially polarized voting subsides in Pasco, the City could revisit the inclusion of an at-large position without violating any laws.

**5-2 Voting Scheme**

- Federal courts have repeatedly found 5-2 and hybrid (with district-based and at-large seats) election systems to be a wholly inadequate remedy to a Section 2 Voting Rights Act violation.

- As the City has acknowledged in the Consent Decree, due to voting trends, Pasco's current at-large system of electing members to City Council has made it virtually impossible for the Latino/a community to elect candidates of their choice.  Therefore, any election system that retains at-large seats fails to adequately remedy the City's Section 2 violation and indeed perpetuates the City's Section 2 violation by diluting the Latino/a population's vote in the same manner that the City's current at-large election system does.

- No seats in a remedial plan should be "off limits" to the Latino/a population—and any at-large seats are functionally "off limits" for Latino/as where, as both our expert and the consent decree attest is the case here, there is racially polarized voting.  The same racially polarized voting dynamic that made all seven at-large seats illegal and resulted in Pasco's admission of liability, makes even one at-large seat illegal because no Latino/a could ever hope to win such a seat.

- In a 5-2 plan there will only be two (2) majority Latino/a districts, whereas in a seven single-member district plan, the City could create three (3) majority Latino districts.  Since the majority of the City of Pasco is Latino/a, a 5-2 plan would not meet the City's goal of providing equal and proportional representation.

September 16, 2016
Page 3

- A 5-2 plan retains almost one third of the Council seats as at-large seats that, due to racially polarized voting, will effectively remain unobtainable for Latino/a candidates of choice.

- The larger size of each district in a 5-2 plan increases the difficulty of running and campaigning for Latino/a preferred candidates for a seat in each district.

- Minority candidates seeking election under the at-large position would be disproportionately affected by the increased expense of a city-wide campaign required to seek an at-large position.

**6-1 Voting Scheme**

- A 6-1 plan is an insufficient remedy under Section 2 for the same reasons the 5-2 proposal is inadequate. The reduction of the at-large positions from two to one does not remedy the dilution of the Latino/a vote created by racially polarized voting in Pasco. And although each of the six districts would be smaller than the five in a 5-2 system, they would still be larger than the districts under a 7 single member system.

We hope you find the above information helpful and look forward to hearing the outcome of your vote.

Sincerely,

/s/Emily Chiang
Emily Chiang, WSBA No. 50517
echiang@aclu-wa.org
La Rond Baker, WSBA No. 43610
lbaker@aclu-wa.org
Breanne Schuster, WSBA No. 49993
bschuster@aclu-wa.org
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184

/s/Brendan V. Monahan
Brendan V. Monahan, WSBA No. 22315
bvm@stokeslaw.com
STOKES LAWRENCE VELIKANJE
MOORE & SHORE
120 N. Naches Avenue
Yakima, Washington 98901-2757

September 16, 2016
Page 4

Telephone: (509) 853-3000

/s/Gregory Landis
Gregory Landis, WSBA No. 29545
Cristin Kent Aragon, WSBA No. 39224
YARMUTH WILSDON PLLC
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
Telephone: (206) 516-3800
glandis@yarmuth.com
caragon@yarmuth.com

*Attorneys for Plaintiff, Bertha Aranda Glatt*