1

THE HONORABLE LONNY R. SUKO

2

Emily Chiang, WSBA No. 50517
La Rond Baker, WSBA No. 43610
3

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
4

Seattle, Washington 98164
5

(206) 624-2184
echiang@aclu-wa.org, lbaker@aclu-wa.org
6

Brendan V. Monahan, WSBA No. 22315
Jaime Cuevas, Jr., WSBA No. 51108 (*E.D. Wash. Admission Pending*)
7

STOKES LAWRENCE VELIKANJE MOORE & SHORE
120 N. Naches Avenue
8

Yakima, Washington 98901-2757
9

(509) 853-3000
Brendan.Monahan@stokeslaw.com, Jaime.Cuevas@stokeslaw.com
10

11

Gregory Landis, WSBA No. 29545
Cristin Kent Aragon, WSBA No. 39224
12

YARMUTH WILSDON PLLC
1420 Fifth Avenue, Suite 1400
13

Seattle, Washington 98101
Telephone: (206) 516-3800
14

caragon@yarmuth.com, glandis@yarmuth.com
15

*Attorneys for Plaintiff, Bertha Aranda Glatt*

16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

17

| | |
|---|---|
| BERTHA ARANDA GLATT, | Case No. 4:16-CV-05108-LRS |
| Plaintiff, | |
| v. | PLAINTIFF'S RESPONSE TO DEFENDANTS PROPOSED REMEDIAL PLAN |
| CITY OF PASCO, *et al.*, | |
| Defendants. | |

18

19

20

21

22

23

24

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

I.      INTRODUCTION ............................................................................1

II.     ARGUMENT...................................................................................2

    A.  Because Defendants' Proposed Remedial Plan Is Legally Inadequate, this
        Court Owes it no Deference...........................................................4

        1.  The City's plan fails to fully remedy the Section 2 violations. ...............5

        2.  Single-member districting plans are the preferred remedy for vote
            dilution........................................................................6

        3.  An at-large position is problematic when it is a swing vote.................11

        4.  The cases Defendants cite to bolster their claim for deference do not
            support Defendants' argument. ...........................................13

    B.  This Court Should Impose Immediate Implementation of the New Election
        System ..........................................................................16

    C.  The Court Should Enter a Permanent Injunction ........................................20

III.    CONCLUSION................................................................................20

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

# TABLE OF AUTHORITIES

**Cases**

*Benavidez v. Irving Independent School District,*
    No. 13-cv-0087, 2014 WL 4055366 (N.D. Tex. Aug. 15, 2014) ........................2

*Buchanan v. City of Jackson, Tenn.,*
    683 F. Supp. 1537 (W.D. Tenn. 1988) ...................................................... 2, 4, 5

*Carrollton Branch of NAACP v. Stallings,*
    829 F.2d 1547 (11th Cir. 1987) .........................................................15

*Chapman v. Meier,*
    420 U.S. 1 (1975)...............................................................................6

*Citizens for Good Government v. City of Quitman, Miss.,*
    148 F.3d 472 (5th Cir. 1998) ...................................................... 13, 14

*Clark v. Roemer,*
    777 F. Supp. 471 (M.D. La. 1991)...............................................................17

*Desena v. Maine,*
    793 F. Supp. 2d 456 (D. Me. 2011) ........................................... 16, 17

*Dickinson v. Indiana State Election Board,*
    933 F.2d 497 (7th Cir. 1991) ...................................................................4

*Dillard v. Crenshaw County,*
    649 F. Supp. 289 (M.D. Ala. 1986) ...................................................8

*Fabela v. City of Farmers Branch, Tex.,*
    No. 10-cv-1425, 2012 WL 3135545 (N.D. Tex. Aug. 2, 2010) ........................2

*Harper v. City of Chicago Heights,*
    223 F.3d 593 (7th Cir. 2000) ...................................................... 12, 13

*Harvell v. Blytheville School District No. 5,*
    126 F.3d 1038 (8th Cir. 1997) ...............................................................3, 7

*Hines v. Mayor and Town Council of Ahoskie,*
    998 F.2d 1266 (4th Cir. 1993) ...................................................... 4, 5, 15

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

*Johnson v. DeGrandy*,
    512 U.S. 997 (1994)............................................................................3

*LULAC Council No. 4836 v. Midland Indeendent School District*,
    648 F. Supp. 596 (W.D. Tex. 1986) ....................................................6

*McGhee v. Granville County*,
    860 F.2d 110 (4th Cir. 1988) ...............................................................5

*McNeil v. Springfield Park District*,
    851 F.2d 937 (7th Cir. 1988) ......................................................... 4, 15

*Montes v. City of Yakima*,
    No. 12-cv-3108, 2015 WL 11120964 (E.D. Wash. Feb. 17, 2015) ........... 14, 17

*Montes v. City of Yakima*,
    No. 12-cv-3108, 2015 WL 11120965 (E.D. Wash. Mar. 19, 2015)...................7

*NAACP v. Kershaw County*,
    838 F. Supp. 237 (D. S.C. 1993) ............................................... 14, 15

*Neal v. Harris*,
    837 F.2d 632 (4th Cir. 1987) .............................................................17

*Thornburg v. Gingles*,
    478 U.S. 30 (1986)........................................................................ 2, 16

*United States v. Dallas County Commission, Dallas County, Ala.*,
    850 F.2d 1433 (11th Cir. 1988) ............................................... 7, 8, 13

*United States v. Osceola County, Fla.*,
    474 F. Supp. 2d 1254 (M.D. Fla. 2006)............................................7

*United States v. Paradise*,
    480 U.S. 149 (1987)............................................................................5

*Williams v. City of Texarkana, Ark.*,
    861 F. Supp. 771 (W.D. Ark. 1993) ...................................................6

**Statutes**

42 U.S.C. §1973 ............................................................... *passim*

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

**Legislative Materials**

Pub. L. 97-205, 96 Stat. 131, §3 ................................................................16

**Other Authorities**

City of Pasco,
   *Matt Watkins Background Information* (last visited Nov. 1, 2016),
   https://www.pasco-wa.gov/126/Matt-Watkins ....................................................11

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## I.      INTRODUCTION

Despite conceding in the Partial Consent Decree, Dkt. 16, that Latino citizens in the City of Pasco ("the City") have for decades been prevented from electing their candidates of choice to the City Council due to racially polarized voting in at-large elections, Defendants now urge this Court to adopt a remedial plan comprised of six (6) single-member districts and one (1) at-large seat. This proposed remedial plan will not fully or completely remedy the vote dilution and therefore should therefore be accorded no deference by this Court.

The City claims that an at-large seat is important to ensure that a Councilmember is beholden to all of Pasco's residents. While this goal is laudable, the City fails to acknowledge that the same vote-dilution dynamics it stipulated to in the Partial Consent Decree will put every at-large seat—even if there is only one such seat—out of reach of the Latino community. Indeed, far from needing to consider all of Pasco's residents, the at-large seat will functionally not need to be accountable to the Latino community. This is a fact that the City itself acknowledges when it argues that the Latino community will not have access to its at-large seat until, at the absolute earliest, 2021.

Even though the City's plan does not remedy all vote dilution in Pasco City Council elections, the City appears to believe the inclusion of three (3) majority-minority districts insulates it from challenge. But Section 2 remedies must do more

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 1

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

than achieve rough proportionality: they must provide a full and complete remedy to the underlying violation. Because the City's proposed remedial plan will continue the dilutive effect at the heart of its Section 2 violation, this Court owes it no deference. As such, Plaintiff requests that the Court reject the City's proposal.

## II.    ARGUMENT

A number of important issues are not in dispute. First, there is racially polarized voting in the City, which is a significant reason the City stipulated to a finding of liability under Section 2.[1] Dkt. 16 at 7. Second, the test under Section 2 is whether a remedial plan *fully* remedies the Section 2 violation and its discriminatory effects. *Buchanan v. City of Jackson, Tenn.*, 683 F. Supp. 1537, 1541 (W.D. Tenn. 1988) (affirming that a court "cannot authorize an element of an election proposal that will not with certitude *completely* remedy the Section 2 violation").

---

[1] Racially polarized voting occurs when "there is a consistent relationship between [the] race of the voter and the way in which the voter votes." *Benavidez v. Irving Indep. Sch. Dist.*, No. 13-cv-0087, 2014 WL 4055366, at *10 (N.D. Tex. Aug. 15, 2014) (citing *Fabela v. City of Farmers Branch, Tex.*, No. 10-cv-1425, 2012 WL 3135545, at *8 (N.D. Tex. Aug. 2, 2010)).  *See also Thornburg v. Gingles*, 478 U.S. 30, 53 n.21 & n.56 (1986)).

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11

Defendants effectively ignore both of these issues in asking the Court to adopt their remedial plan. Defendants argue that once rough proportionality is achieved in a remedial plan, the rest of the plan is within the City's discretion. Dkt. 25 at 2 ("The City's proposal is a full and complete remedy of the Section 2 violation *because* it provides Latinos with three majority-minority districts." (emphasis added)). But that is not the law. For courts to defer to a jurisdiction's proposed remedial election system, the *entire* plan must fully remedy the Section 2 violation, including its discriminatory effects. *Harvell v. Blytheville Sch. Dist. No. 5*, 126 F.3d 1038, 1040 (8th Cir. 1997). Although rough proportionality is relevant, the inquiry does not simply end there.

12
13
14
15
16
17
18
19
20
21
22

The core inquiry for this Court is whether, in the totality of circumstances, "members of a minority group have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Johnson v. DeGrandy*, 512 U.S. 997, 1000 (1994) (internal quotation marks and citation omitted). The City's plan, in others words, must as a whole fully remedy the Section 2 violation. Because Defendants' inclusion of an at-large seat allows racially polarized voting to continue to limit Latino participation in elections, it neither fully remedies the admitted Section 2 violation nor remedies its discriminatory effects.

23
24

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 3

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

## A.    Because Defendants' Proposed Remedial Plan Is Legally Inadequate, this Court Owes it no Deference

3

4

"If a vote dilution violation is established, the appropriate remedy is to

5

impose a single member district system to eradicate, to the maximum extent

6

possible *by that* means, the dilution proximately caused by that system." *Hines v.*

7

*Mayor and Town Council of Ahoskie*, 998 F.2d 1266, 1272 (4th Cir. 1993) (quoting

8

*McNeil v. Springfield Park Dist.*, 851 F.2d 937, 942 (7th Cir. 1988)). Although

9

Pasco admitted that its' at-large election system unlawfully diluted the Latino vote,

10

Pasco now argues that retaining an at-large seat is appropriate and that its proposed

11

remedial election plan merits this Court's deference.

12

But when a jurisdiction fails to completely remedy the violation of Section 2

13

of the Voting Rights Act, the Court *must* impose its own remedial measures.

14

*Dickinson v. Ind. State Election Bd.*, 933 F.2d 497, 501 n.5 (7th Cir. 1991)).

15

Further, "[t]he court must not . . . defer blindly to legislative prerogative [as t]here

16

are clear standards which must be applied in deciding whether defendants'

17

proposed plan is acceptable under the Voting Rights Act." *Buchanan*, 683 F. Supp.

18

at 1541. Those standards include an obligation to "exercise its traditional equitable

19

powers to fashion the relief so that it *completely* remedies the prior dilution of

20

minority voting strength and *fully* provides equal opportunity for minority

21

citizens[.]" *Id.*

22

23

24

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 4

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1    Courts also have a "duty to render a decree which will so far as possible

2    eliminate the discriminatory effects of the past as well as bar discrimination in the

3    future." *Buchanan*, 683 F. Supp. at 1541 (quoting *United States v. Paradise*, 480

4    U.S. 149, 183 (1987)). So although proportional representation is an important

5    factor, courts "may not use 'proportional representation as the ultimate standard for

6    assessing the legal adequacy of a remedial legislative redistricting plan.'" *Hines*,

7    998 F.2d at 1272. *See also McGhee v. Granville Cnty.*, 860 F.2d 110, 120 (4th Cir.

8    1988) (deferring to the County's single member district electoral plan because the

9    Court reasoned that the plan provided the maximum opportunity for representation

10   possible).

11   **1.    The City's plan fails to fully remedy the Section 2 violations.**

12   The City's hybrid election system does not meet judicial standards for a full

13   and effective remedy for the long-standing deprivation of Latino voting rights in

14   Pasco. Racially polarized voting in Pasco's at-large City Council elections has

15   historically made it impossible for the Latino community to elect a candidate of

16   their choice. Dkt. 23 at ¶¶17-24; Dkt. 16 at ¶18. As the City stipulated, "[t]he

17   majority of voters in Pasco are white and have historically engaged in bloc voting

18   favoring non-Latino candidates," thereby blocking the Latino population from

19   having any meaningful say in elections that are held at-large. Dkt. 16 at ¶18. As a

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 5

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

result, "no Latino candidate has ever won an opposed election to the Pasco City Council." *Id.* at ¶18.

The fact that vote dilution lies at the heart of the City's Section 2 violation cautions against retaining any at-large election seats in a remedial election plan: any at-large elections will continue to have a dilutive impact on the Latino vote by keeping the elections for at-large seats functionally off-limits to Latino voters. *See generally* Dkt. 23.

### 2. Single-member districting plans are the preferred remedy for vote dilution.

Precisely because racially polarized voting affects each and every at-large seat up for election, courts have generally rejected the retention of at-large seats in election systems as incomplete Section 2 remedies. *See LULAC Council No. 4836 v. Midland Indep. Sch. Dist.*, 648 F. Supp. 596, 609 (W.D. Tex. 1986) (rejecting a continued at-large elections where a Section 2 vote dilution violation has been found). In fact, the retention of at-large seats after a finding of a Section 2 vote dilution violation is impermissible "absent unusual circumstances." Instead, "single member districts are the preferred remedy where a violation of voting rights has been found." *Williams v. City of Texarkana, Ark.*, 861 F. Supp. 771, 772 (W.D. Ark. 1993) (rejecting a proposed 6-1 hybrid election system and imposing a 7 single-member districting plan); *Chapman v. Meier*, 420 U.S. 1, 21 (1975). *See also*, *United States v. Dallas Cnty. Comm'n, Dallas Cnty., Ala.*, 850 F.2d 1433,

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1438-39 (11th Cir. 1988) (rejecting a 4-1 hybrid plan because "many of the concerns which prompted" the finding of a Section 2 violation four years earlier "continue to exist" in the at-large election of one member of the school board); *United States v. Osceola Cnty., Fla.*, 474 F. Supp. 2d 1254, 1256 (M.D. Fla. 2006) (holding that where "Hispanics in Osceola have no reasonable opportunity to elect members in an at-large election," a Section 2 remedy should not include at-large seats); *Harvell*, 126 F.3d at 1040 (affirming the district court's rejection of defendants' proposed 5-2 hybrid plan because "[t]he inability of black voters to affect the at-large elections under the 5-2 plan is no different from what it was under the previous electoral scheme").

Due to the concerns about at-large seats in election systems in jurisdictions that have high rates of racially polarized voting, courts routinely reject hybrid plans as remedies for Voting Rights Act violations, even where such plans contain one or more majority-minority districts. *See Dallas County Comm'n*, 850 F.2d at 1439 (rejecting hybrid plan with one at-large seat and two majority-Black districts because racially polarized voting and "insurmountable social and economic barriers" did not satisfy the Voting Rights Act). *See also Montes v. City of Yakima*, No. 12-cv-3108, 2015 WL 11120965, at *2 (E.D. Wash. Mar. 19, 2015) (rejecting 5-2 hybrid plan that contained two majority-Latino districts after finding such a plan would simply perpetuate the dilution of the Latino vote); *Dillard v. Crenshaw*

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 7

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1  *Cnty.*, 649 F. Supp. 289, 296 (M.D. Ala. 1986) (rejecting a hybrid plan where a

2  commission chairperson would be elected at-large).

3       Indeed, in an instance very similar to Pasco, the Court of Appeals for the

4  Eleventh Circuit held that a remedial election plan that retained an at-large seat

5  was not a full and complete remedy to the vote dilution problem undergirding the

6  Section 2 violation. *Dallas County Comm'n*, 850 F.2d at 1440. There, the Court

7  found that Blacks would continue to be excluded from the election of the at-large

8  seat because the proposed hybrid "election plan, which calls for an at-large election

9  of [one member of the elected body,] perpetuates rather than ameliorates the

10  inequities which have resulted in an abridgement of Dallas County's [B]lack

11  citizens' access to the political process." *Id.*

12       Pasco's situation is similar to the multiple cases in which courts have found

13  that any at-large elections would be an insufficient remedy for unlawful vote

14  dilution. *Supra* at 7. Due to historical racially polarized voting, the Latino

15  community is effectively shut out of any at-large election that occurs within

16  Pasco.[2] Defendants themselves acknowledge this when they claim that "as Latinos

_____

[2] Defendants claim, somewhat incredibly, that Councilmember Yenney's election

to an at-large seat—under an admittedly discriminatory election system—

constitutes a "bright spot in the City Council's election history" because Latinos

constitute 60.6% of the CVAP in Councilmember Yenney's district and he

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 8

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1    inevitably grow to a citywide majority of eligible voters, the at-large seat will

2    provide Latinos across the City with an opportunity to elect their candidate of

3    choice." Dkt. 25 at 2; *id.* at 23.

4        Defendants argue that population trends will remedy any persistent vote

5    dilution effect of maintaining an at-large seat on the City Council. To bolster this

6    argument, Defendants note that Latinos make up nearly 71% of the student body in

7    the Pasco School District, Dkt. 25 at 23, and claim that the Pasco School District

8    data "strongly suggests that [Latinos] will be a majority of registered voters" by

9

10   2021. *Id.* at 23. This assertion relies in part on a statement from Defendants'

11   _____

12   defeated a Latina opponent in the general election. Dkt. 25 at 12. In essence,

13   Defendants argue that because Mr. Yenney was elected, a majority of Latinos *must*

14   have voted for him—and thus, no Section 2 violation exists in continuing an at-

15   large seat. Defendants also claim that deference is required, not only because in

16   their calculus Yenney was the preferred candidate, but because their proposed at-

17   large seat has "public policy benefits" because the seat necessarily provides for

18   "district-wide support." *Id.* at 21. Accepting this logic, no plaintiff could ever

19   prove a Section 2 violation in an election system that has district-based primary

20   elections and at-large elections, like the unlawful systems utilized by Pasco and

21   Yakima.

22

23

24

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 9

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

expert, Dr. Peter Morrison, that "Latinos are currently 44% of all registered voters" in Pasco. *Id.* Contrary to Dr. Morrison's "visual inspection," the City of Pasco and the Pasco School District geographic areas and populations are not in fact coextensive. Cooper Decl. ¶¶4-7. Further, "Dr. Morrison has provided no supporting documentation as to how he arrived at a 44% Latino registration rate except for a vague reference to November 2014 election data." *Id.* at ¶16.

Using the standard method of determining Latino registered voters in Section 2 Voting Rights Act litigation, which includes matching voter lists to a Department of Justice Latino surname list, the registration rate is 29.65%. *Id.* at ¶¶17-18. In short, based on a more traditional review of available census data, it is far more likely that the Latino population will have to wait well beyond 2021 to have meaningful input into the election of a key seat on the City Council.[3] *Id.* at ¶¶10-14. But even if the City's wishful thinking were correct, Latinos would not have meaningful access to the at-large seat until 2021.

In addition, the high cost of campaigning across the entire city (instead of just a district) will disproportionately impact Latino candidates because of the "sharp socio-economic divide between predominately Latino east Pasco and

---

[3] The likelihood of further annexations in Pasco that drive down the LCVAP will also prolong the Latino community's inability to participate meaningfully in the election of the at-large seat on the Council. Dkt. 24 at ¶59.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 10

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

predominately White west Pasco[.]" Dkt. 24 at ¶59. "This geographic and socio-economic divide would disadvantage campaign funding and get-out-the-vote efforts for Latino candidates in an at-large election compared to an election in a geographically smaller and less populous single-member district." *Id.* at ¶¶60-66.

Due to racially polarized voting dynamics, a Latino candidate is simply more likely to succeed in an election that is district based than at-large. In sum, the retention of any at-large seat fails to fully eliminate the vote dilution violation and therefore falls short of a "full and complete" remedy which the law requires.

### 3.    An at-large position is problematic when it is a decisive vote.

The retention of an at-large seat in the City's proposed plan not only continues the vote dilution in at-large elections for Position 7, it also compounds the problem by electing the *swing vote* at-large.[4] Under both the City and Plaintiff's plans, there would be three majority-Latino districts and three majority-white districts. The key difference between the two plans is that Defendants' plan puts the swing vote between the Latino and white districts out of reach for the

---

[4] Under Defendants' plan, moreover, the at-large seat would be occupied by Mayor Matt Watkins until 2019. Dkt. 25 at 26. Mayor Watkins was elected to the Council in 2004 and elected as Mayor in 2010. City of Pasco, *Matt Watkins Background Information* (last visited Nov. 1, 2016), https://www.pasco-wa.gov/126/Matt-Watkins.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 11

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

Latino community until well past 2021.Cooper Decl. ¶¶10-14, 19; Dkt. 23. As racially polarized voting analysis proves and the City's stipulation conceded, the white and Latino populations vote quite differently. The swing vote is thus critical for any issue on which the two populations are divided. As long as the Latino community is structurally barred from electing that at-large position, it will have no meaningful say in who is elected to represent that critical swing seat.

The Seventh Circuit of the United States Courts of Appeals considered a similar situation in *Harper v. City of Chicago Heights*, 223 F.3d 593, 600 (7th Cir. 2000). *Harper* was a follow up Section 2 challenge to a 6-1 hybrid election system that had been implemented after a finding of a Section 2 violation. There, the court rejected a plan to retain a single at-large seat in a city council election system because it was found to continue the dilution of the minority vote. *Id.* The court reasoned that "[u]nder the plan adopted by the referendum, only the tie-breaker is elected at large, but taken as a whole this had the same diluting effect as the original at-large system." In reversing the 6-1 hybrid system, the court adopted the plaintiffs' argument that "the six-member structure negates the power of the minority representatives because [] in practice tie votes have frequently resulted, with the mayor (who is still elected at large) usually breaking the tie by voting with

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

the white aldermen[.]"[5] *Id. See also Dallas County Comm'n*, 850 F.2d at 1439

(rejecting a proposal to retain one at-large seat after finding that the at-large seat

"would be a seat in which black voters would be effectively foreclosed from

having an equal opportunity to elect candidates of their choice").

*Harper* came before the Seventh Circuit with evidence of tie-breaking in

favor of the white districts and continued dilution of the minority vote. *Harper*,

223 F.3d at 600. It is a cautionary tale and a strong reminder that any remedy for a

Section 2 violation must be full and complete in order to ensure that the

discriminatory effects of prior systems do not continue.

### 4. The cases Defendants cite to bolster their claim for deference do not support Defendants' argument.

The City argues that "reapportionment plans prepared by legislative bodies

may employ multimember [or at-large] districts" so long as at-large districts are

not included "solely to diffuse [minority] voting strength." Dkt. 25 at 20-21

(alterations in original). But its reliance for this proposition on *Citizens for Good

Government v. City of Quitman, Miss.*, 148 F.3d 472, 476 (5th Cir. 1998) and

---

[5] While the plan at issue in *Harper* included providing the mayor with additional

powers not at issue here, the court's analysis primarily focused on the fact that the

position was a functional tie-breaker between evenly split (white and Black)

districts on the city council.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 13

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

*NAACP v. Kershaw County*, 838 F. Supp. 237, 242 (D. S.C. 1993) is fatally flawed. In *Citizens for Good Government*, the defendant city refused to submit a proposed plan to the Court for consideration. 148 F.3d at 474. Thus, the court was not examining a "reapportionment plan[] prepared by [the] legislative bod[y]." *Id.* at 476. Accordingly, the court's statements about the standards for assessing a legislatively proposed plan are non-binding dicta.

*Kershaw County*, Pasco's remaining citation, does not support the City's position either. First, the facts of *Kershaw County* are decidedly different than the facts at issue here in Pasco. In *Kershaw County*, the state's legislative policies governing elections *required* that a particular seat on the council the Chair of the Council, be elected at-large. *Kershaw County*, 838 F. Supp. at 239. Courts are required to minimize the abrogation of state laws and pre-existing policies regarding election systems when ordering Section 2 remedies. *Montes v. City of Yakima*, No. 12-cv-3108, 2015 WL 11120964, at *5 (E.D. Wash. Feb. 17, 2015) (noting that "state law must sometimes yield to afford an effective remedy under the Voting Rights Act," but "where it is not necessary to abrogate state law, the Court must respect the legislation of the State of Washington." (internal citation omitted)). Conversely, in Washington State and in Pasco, there is no policy directive—much less state law—requiring any particular seat on Pasco's council to be elected at-large.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 14

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

Further, a close reading of the cases relied upon in the *Kershaw County* decision demonstrates that the court's conclusion is not supported by the precedent upon which it relies. *Kershaw County*'s standard for analyzing and permitting an at-large seat is based on *Hines*, 998 F.2d at 1272, which applied an intent standard to a legislature's choice regarding the *size* of a legislative body, but did *not* apply an intent standard when it determined whether retention of an at-large seat in a hybrid system versus a single member district seat was an acceptable Section 2 remedy. In reaching its decision, *Hines* cited *McNeil*, 851 F.2d at 946, which in turn cited *Carrollton Branch of NAACP v. Stallings*, 829 F.2d 1547, 1551 (11th Cir. 1987) for the proposition that the district court had "the power . . . to *increase the number* of government officials in order to give minority voters an opportunity to elect candidates of their choice." (emphasis added). In short, the cases on which *Kershaw County* relied for the proposition Defendants cite it for related to the *size* of the legislative bodies—not the inclusion of an at-large seat—and the court's misapplication of these cases makes its findings regarding at-large seats unsupported.

This Court should reject the City's argument that absolute deference is owed to its proposed remedial plan unless it can be proven that the City created the plan to intentionally discriminate. Such a standard would functionally read an intent requirement into Section 2, a requirement Congress has already explicitly rejected.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 15

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

Intent is neither required for a finding of liability under Section 2, nor to determine whether a proposed election plan fully remedies a Section 2 violation. *See Gingles*, 478 U.S. at 35-36. *See also* Pub. L. 97-205, 96 Stat. 131, §3 (amending Voting Rights Act and clarifying that under Section 2 there is no requirement for a finding of discriminatory intent only discriminatory impact).

It would be plain error for a court to rule that legislatively proposed remedial plans may *only* be rejected when the court explicitly finds intentional discrimination to be the plan's motivating factor. Under the City's argument, after a finding of a Section 2 violation, which is not predicated on a finding of intent, courts would owe a jurisdiction's proposed remedial plans deference unless and until plaintiffs could prove that the jurisdiction developed the plan with the express intent to discriminate. Such a result would eviscerate Section 2 by functionally eliminating all authority courts have to remedy violations of the Voting Rights Act based on discriminatory effects rather than discriminatory intent.

**B.    This Court Should Impose Immediate Implementation of the New Election System**

In her opening brief, Plaintiff established that a full and complete remedy for Voting Rights Act violations must not be delayed. *See* Dkt. 21 at 14-17. Even if special elections must be held out of cycle in order to afford prompt relief, courts readily and routinely order such elections in order to fully remedy Section 2 violations. *See Desena v. Maine*, 793 F. Supp. 2d 456, 462 (D. Me. 2011)

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 16

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1  ("Constitutional violations, once apparent, should not be permitted to fester; they

2  should be cured at the earliest practicable date."); *Neal v. Harris*, 837 F.2d 632,

3  634 (4th Cir. 1987) ("The special election . . . is not a distinct remedy. It is merely

4  a vehicle for the immediate implementation of the remedy provided in the court's

5  decree."); *Clark v. Roemer*, 777 F. Supp. 471, 484 (M.D. La. 1991) ("[T]his Court

6  and other District Courts have found that where a governing body has been elected

7  under . . . an election scheme such as at-large, cancelling out the voting strength of

8  a cognizable portion of the populace, thus denying them access to the political

9  process, prompt new elections are appropriate.'"); *Montes*, 2015 WL 11120964, at

10  *8 (ordering all seats to stand for election under the court-ordered remedial plan).

11      The City of Pasco does not lodge any objection to a prompt remedy here—

12  *i.e.*, the election of all seven City Council positions in the upcoming 2017 election

13  cycle. Instead, it "leaves the method of implementation to this Court's discretion."

14  But this is not a matter for discretion: case law firmly establishes that prompt

15  remedial implementation is preferred. *Desena*, 793 F. Supp. 2d at 462. As this

16  Court stated in *Montes*:

17  
> Given the long-standing Section 2 violation, a broad electoral field
> only serves to assure that each citizen of voting age has the
> appropriate opportunity, under the new electoral scheme, *to have his
> or her voice heard now*. This compelling remedial goal outweighs any
> slight inconvenience to those three candidates that will be displaced
> after having been elected under a flawed election system.

*Montes*, 2015 WL 11120964, at *11 (emphasis added).

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 17

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

 Despite their lack of objection to 2017 elections, Defendants make a half-hearted attempt to justify a delayed or "staggered" implementation. But support for any delayed implementation is not to be found in the tepid argument that Defendants make and generally will not be found in case law. Having admitted that three single member, majority-Latino districts should be drawn in order to remedy the Voting Rights violations, Defendants in effect claim that one of those three new districts should not be able to elect a Council member until *three years* from now. To support this contention, the City argues that the council member, who won the 2015 primary in a district that geographically overlaps with the new majority-Latino single member districts, soundly defeated three Latino candidates and in the general election won slightly more votes in that district than his Latino opponent.[6]

---

[6] In effect, the City is attempting to claim that Councilman Yenney is the Latino candidate of choice for his district. However, the City's attempt fails to meet the basic analytical standards for determining a population's candidate of choice. Engstrom Decl. at ¶¶3-4. And, it sidesteps any actual analysis of racially polarized voting that may have occurred in the election or provide information regarding voter turnout for that particular election. *Id.* at ¶¶3-4. As such, its suggestions amount to sheer speculation of data that is not relevant to Section 2 litigation.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 18

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

  This argument begs far more questions than it answers. A primary vote in Pasco's illegal at-large system means little, particularly when three Latino candidates split the Latino community's votes. Most concerning in Defendants' argument is the absence of a racially polarized voting analysis, data regarding Latino voter turnout, or any statistical or factual information regarding how the Latino community actually voted in this race. More importantly, it is evident from the small numbers of votes cast from District 1 in both the 2015 primary, and (apparently) in the general election, that many if not most of the voting age Latinos there were not motivated to vote at all—not surprising in light of the historic and numerical impossibility for Latinos to win any at-large seat in Pasco.

  Aside from its misleading intimation that the majority of Latinos wanted Councilmember Yenney to represent their interests, the City offers but one supposed benefit of allowing this at-large position to continue in place for three years: it provides "beneficial continuity." But continuity is up to the voters, who can return to office any Council member whom they deem has performed well. If Councilmember Yenney is in fact preferred by the majority of voters in District 1, he will be re-elected. Assuming such a preference for three years following the determination that his and all other councilmembers' elections are the fruits of an illegal at-large system is, however, wholly improper.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 19

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

**C.    The Court Should Enter a Permanent Injunction**

2

3      Defendants request that the Court not enter a permanent injunction because

4   the Washington Legislature might someday permit the City to change its election

5   system. Should the Legislature do so, the City can (and should) petition the Court

6   to modify the injunction to permit the City to take advantage of the new law. But

7   the rights of Latino voters in Pasco are being violated now. In accordance with

8   Section 2, the Court should enter a permanent injunction.

9                              **III.      CONCLUSION**

10      For the foregoing reasons Plaintiff respectfully requests that the Court reject

11   Defendants' proposed remedy and adopt Plaintiffs' proposed remedial plan and

12   injunction.

13      DATED this 1st day of November, 2016.

14

15                          /s/La Rond Baker
                            Emily Chiang, WSBA No. 50517
16                          echiang@aclu-wa.org
                            La Rond Baker, WSBA No. 43610
17                          lbaker@aclu-wa.org
                            AMERICAN CIVIL LIBERTIES UNION OF
18                          WASHINGTON FOUNDATION
                            901 Fifth Avenue, Suite 630
19                          Seattle, Washington 98164
                            Telephone: (206) 624-2184
20

21                          /s/Brendan V. Monahan
                            Brendan V. Monahan, WSBA No. 22315
22                          Brendan.Monahan@stokeslaw.com
                            Jaime Cuevas, Jr., WSBA No. 51108**
23                          Jaime.Cuevas@stokeslaw.com

24

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 20

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

STOKES LAWRENCE VELIKANJE MOORE & SHORE
120 N. Naches Avenue
Yakima, Washington 98901-2757
Telephone: (509) 853-3000


/s/Gregory Landis
Gregory Landis, WSBA No. 29545
glandis@yarmuth.com
Cristin Kent Aragon, WSBA No. 39224
caragon@yarmuth.com
YARMUTH WILSDON PLLC
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
Telephone: (206) 516-3800

**\*\*Admission to E.D. Wash. Pending**

*Attorneys for Plaintiff, Bertha Aranda Glatt*

PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED REMEDIAL PLAN- 4:16-CV-05108-LRS - 21

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

## <u>CERTIFICATE OF SERVICE</u>

2    I hereby certify that on November 1, 2016, I caused the foregoing document to be:

3    ⊠      electronically filed with the Clerk of the Court using the CM/ECF system
            which will send notification of such filing to the following:

4

5    Emily Chiang              echiang@aclu-wa.org
     Brendan V. Monahan        Brendan.Monahan@stokeslaw.com
     Jaime Cuevas, Jr.         Jaime.Cuevas@stokeslaw.com
6    Cristin Kent Aragon       caragon@yarmuth.com
     Gregory Landis            glandis@yarmuth.com
7    Leland Barrett Kerr       lkerr@kerrlawgroup.net
     John A. Safarli           jsafarli@floyd-ringer.com

8

9                              /s/La Rond Baker
                               La Rond Baker, WSBA No. 43610
10                             lbaker@aclu-wa.org
                               AMERICAN CIVIL LIBERTIES UNION
11                             OF WASHINGTON FOUNDATION
                               901 Fifth Avenue, Suite 630
12                             Seattle, Washington 98164
                               Telephone: (206) 624-2184

13

14

15

16

17

18

19

20

21

22

23

24

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184