HON. LONNY R. SUKO

Leland B. Kerr, WSBA No. 6059
lkerr@kerrlawgroup.net
KERR LAW GROUP
7025 W. Grandridge Blvd., Ste. A
Kennewick, WA 99336
(509) 735-1542

John A. Safarli, WSBA No. 44056
jsafarli@floyd-ringer.com
Casey M. Bruner, WSBA No. 50168
cbruner@floyd-ringer.com
FLOYD, PFLUEGER & RINGER, P.S.
200 W. Thomas Street, Ste. 500
Seattle, WA 98119
(206) 441-4455

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BERTHA ARANDA GLATT

    Plaintiff,

  v.

CITY OF PASCO, *et al.*,

    Defendants.

Case No. 4:16-CV-05108-LRS

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 1

FLOYD, PFLUEGER & RINGER P.S.
200 West Thomas Street, Suite 500
Seattle, WA 98119
Tel 206 441-4455
Fax 206 441-8484

## I.  INTRODUCTION

The Court should disregard Plaintiff's remedial plan. The City's plan provides a complete remedy to the Voting Rights Act Section 2 violation and does not create any new violations of law. Therefore, as precedent requires, the Court owes deference to and must adopt the legislatively created plan without regard to any alternative plan proposed.

## II.  BACKGROUND[1]

Plaintiff Bertha Glatt brought this lawsuit against the City of Pasco ("the City"), alleging that the City's current city council election plan violated Section 2 of the Voting Rights Act. On September 2, 2016, the parties filed a Partial Consent Decree with the Court stipulating that the current election system violates Section 2 of the Voting Rights Act. The parties were instructed to file proposed remedial plans on October 15, 2016.[2]

---

[1] This section only contains a brief overview of the relevant facts. Defendants incorporate the extensive factual statement detailed in the City's Motion for Entry of Proposed Remedial Plan and Final Injunction. ECF No. 25 at 1-15.

[2] Since filing its initial proposal, the City has appointed Chi Flores to fill the vacancy created by the death of former Councilmember Mike Garrison. RCW

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 2

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

### III.    ARGUMENT

A "district court begins its remedial-phase evaluation under Section 2 of the Voting Rights Act by considering the defendant's proposed remedy." *U.S. v. Euclid City Sch. Bd.*, 632 F. Supp. 2d 740, 749-50 (N.D. Ohio 2009) (citing *Wise v. Lipscomb*, 437 U.S. 535, 539-41, 98 S. Ct. 2493, 57 L. Ed. 2d 411 (1978)). "Redistricting is a legislative task that federal courts 'should make every effort not to pre-empt.'" *Goosby v. Town Bd. of Hempstead*, 981 F. Supp. 751, 755 (E.D.N.Y. 1997) (quoting *Wise*, 437 U.S. at 539-41). A "court <u>must</u> adopt a defendant's proposed remedy if the plan is legally acceptable." *Euclid*, 632 F. Supp. at 750 (emphasis in original). When evaluating a defendant's proposal, a court is not to inquire whether the defendants have proposed the very best available remedy. *McGhee v. Granville County*, 860 F.2d 110, 115 (4th Cir. 1988). "A district court may reject the defendant's proposal under only one condition: if that proposal 'is legally unacceptable because it violates anew constitutional or statutory voting rights – that is, [if] it fails to meet the same standards applicable to an original

---

42.1.070. A map depicting the residence of each current incumbent is attached an appendix to this response.

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 3

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

challenge of a legislative plan in place.'" *Euclid*, 632 F. Supp. 2d at 750 (quoting *McGhee*, 860 F.2d at 115). "That single question ends the Court's inquiry." *Id.*

**1. The City's Plan Provides a Complete Remedy to the Section 2 Violation**

Whether a particular plan is legally acceptable is a fact-specific inquiry. *See Harper v. City of Chicago Hts.*, 223 F.3d 593, 600 (7th Cir. 2000). "[A] legally acceptable plan is one that corrects the existing Section 2 violation without creating one anew. *Euclid*, 632 F. Supp. 2d at 752. "Such a plan must ensure equal opportunity in voting and afford the minority population a *reasonable opportunity* to elect its preferred candidate through meaningful participation in the political process." *Id.* (emphasis added). This generally requires that a plan include a "majority-minority district." *Georgia State Conference of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 996 F. Supp. 2d 1353, 1358 (N.D. Ga. 2014); *Kimble v. Ctny. of Niagara*, 826 F. Supp. 664, 670 (W.D.N.Y. 1993) ("Once a violation of the act has been admitted or proved, a remedial districting plan should restore those opportunities to minority voters. This may be accomplished through the creation of a majority-minority voting district.")

While a plan must provide a meaningful "opportunity to exercise an electoral power that is commensurate with its population," that is not the same as a guarantee of success. *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399,

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 4

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

428, 126 S. Ct. 2594, 165 L. Ed. 2d 609 (2006). A city "may choose to propose a plan that aims for rough proportionality, because it is safe to assume that a plan with such a feature does not dilute the vote in violation of Section 2." *Euclid*, 632 F. Supp. 2d at 753.

The City of Pasco has proposed a plan that provides Latino voters a reasonable opportunity to elect candidates of their choosing in proportion to their citizen voting age population. The City's proposed remedial plan contains six single-member districts (SMDs) and one at-large seat. Three of the SMDs are "majority-minority" districts and have an eligible voter population that is more than 50% Latino, which is the standard measurement for an effective minority voting opportunity.[3] The City's plan gives Latinos control over three out of seven (or 42.85%) of seats, which is greater than the Latino share of the citywide eligible voter population (38.5%, according to the ACS 2015 1-Year Estimate).

---

[3] The City's demographer is still in the process of calculating the registered voter figures for each district in its proposal. The City originally anticipated submitting this information with this response, but will now be submitting it in its reply due November 15.

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 5

FLOYD, PFLUEGER & RINGER P.S.
200 West Thomas Street, Suite 500
Seattle, WA 98119
Tel 206 441-4455
Fax 206 441-8484

The City's proposal is constitutional, fully cures the Section 2 violation established in the Consent Decree, and provides Latinos with a full and fair opportunity to participate in the political process.

**2. Plaintiff's Argument is Logically Contradictory to Established Precedent**

Plaintiff's sole objection to the mixed, 6/1 plan, is that it includes a single at-large district. The inclusion of an at-large district, with nothing more, is insufficient to find that the City's plan is not a complete remedy.

"[L]egislatively-proposed mixed plans are not *per se* violative of Section 2; to the contrary, they are acceptable." *NAACP v. Kershaw County*, 838 F. Supp. 237, 241 (D.S.C. 1993). "[R]eapportionment plans prepared by legislative bodies may employ multimember [or at-large] districts.'" *Citizens for Good Gov't v. City of Quitman*, 148 F.3d 472, 476 (5th Cir. 1998) (quoting *McDaniel v. Sanchez*, 452 U.S. 130, 139 (1981)). As long as it is not included "solely to diffuse [minority] voting strength," *Keshaw County*, 838 F. Supp. at 242, a legislatively-proposed plan may incorporate an at-large seat. Courts have recognized "legitimate non-discriminatory justifications for the use of . . . at-large elections," including "district-wide support or accountability" and avoiding "[g]eographic partisanship." *Euclid*, 632 F. Supp. 2d at 758-79.

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 6

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

The City's choice to include a single at-large seat was not in any way driven by a desire to "diffuse" minority voting strength. This is clearly evidenced by the fact that the City's plan includes three majority-minority districts, which is the same number of majority-minority districts included in Plaintiff's plan. This is also evidenced by the City's efforts over the years to explore every available option to provide Latinos with voting opportunities, including the possibility of voluntarily changing its election system even though doing so may have violated state law. The City's choice to include a single at-large district was done to further legitimate policy objectives:

- Inclusion of an at-large district would allow for city-wide representation and accountability;

- Inclusion of an at-large district and would avoid the political "balkanization" that can occur in exclusively single-member district cities and provide greater city-wide unity;

- Inclusion of an at-large district would give candidates the option to run for one of two seats (their SMD position or the at-large position);

- Inclusion of an at-large district would double the number of times a given citizen could vote for representation on the council;

- Inclusion of an at-large district would give Latinos who reside in non-majority-minority districts an eventual opportunity to elect their candidate of choice, whereas Latinos in an exclusively SMD plan may never have that

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 7

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

      opportunity if they reside in a non-majority-minority district; and

- Inclusion of an at-large district would provide more flexibility to address the City's changing demographics during periods in between redistricting.

It is clear that there are policy benefits to including an at-large seat in the City's proposed remedial plan. This is judicially acceptable as long as that decision was not made to diffuse minority voting and the plan provides a complete remedy. Here, the choice to include a single at-large district was based on legitimate policy considerations and does not in any way diffuse minority voting opportunities—in fact, it provides opportunities equal in proportion to the Plaintiff's plan.

Still, Plaintiff asserts that any plan that includes an at-large district "would not provide a full and complete remedy of the . . . Section 2 violation because the same racially polarized voting and resultant discriminatory impact that created the Section 2 violation . . . remains a problem even when just one seat is elected at large." ECF No. 21 at 8. This reasoning is both factually incorrect and logically inconsistent with established precedent.

Factually, under the City's 6/1 plan, the discriminatory impact would not remain a problem with a single at-large seat. As detailed above and in the City's proposed plan, the impact of racially polarized voting is completely remedied by

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 8

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

the creation of three majority-minority districts, which ensures that Latino voters have a proportionally equally opportunity to elect their candidates of choice.

Plaintiff then attempts to circumvent the judicially permitted use of at-large districts. Plaintiff argues that "the use of any at-large seat . . . where racially polarized voting occurs, will preclude Latino voters from meaningful participation in electing that seat." ECF No. 21 at 9. This fails both factually and as a matter of precedent.

First, a full remedy does not require that minorities be afforded a reasonable opportunity to elect their candidate of choice in *every* seat. A full remedy only requires that they be given the opportunity to elect their candidate of choice in rough proportionality to their voting age population. If full remedy were to require otherwise, Plaintiff's own plan would fail as an incomplete remedy because there are *four* seats in which Latinos would not have meaningful participation. Clearly, the law requires only that minority voters have a roughly proportional opportunity to elect candidates of their choice. The inclusion of a single at-large seat does not in any way reduce the proportionality of the minorities' opportunities. The City's plan provides the exact same number of opportunity districts as the Plaintiff's.

In fact, the City's remedial plan provides a greater remedy than Plaintiff's plan and is likely to provide that remedy for longer period of time. Both plans

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 9

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

provide for three majority-minority districts. However, under Plaintiff's plan, the LCVAP in the next-closest district (District 5) is only 28.98%. But according to the 2015 1-year American Community Survey, the citywide LCVAP is 38.5% – almost *ten percentage points higher* than Plaintiff's District 5.[4] While both plans provide three majority-minority districts, the City's at-large position is much more Hispanic-influenced than the Plaintiff's next closest district.

Additionally, the City's remedial plan will continue to provide proportional representation after Latinos have reached 50% of the citywide eligible voter population.[5] When the citywide LCVAP reaches 50%, Latinos will have an equal opportunity to elect their candidate of choice to the at-large position, giving Latinos control over four out of seven (or 54.17%) of seats—which would be roughly proportional to their 50% share of the eligible voter population.

The City's fully understands that the Court's paramount concern is to provide a complete remedy right now. And the City's plan does that. But as an added benefit, the City's plan puts a fourth seat within closer reach of Latino control than Plaintiff's plan. This is true both in the present (38.5% citywide

---

[4] ECF No. 26-13 at ¶ 5.

[5] The City's LCVAP is expected to reach 43% by 2021. ECF No. 26-13 at ¶ 5.

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 10

FLOYD, PFLUEGER & RINGER P.S.
200 West Thomas Street, Suite 500
Seattle, WA 98119
Tel 206 441-4455
Fax 206 441-8484

LCVAP vs. only 28.98% LCVAP in Plaintiff's District 5) and in the future, as the at-large seat will become an opportunity position when the City's LCVAP reaches 50%.

Second, Plaintiff's argument attempts to circumvent the judicially permitted use of an at-large district. In order to find that a Section 2 violation occurred at all, a court must find that racially-polarized voting exists. *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986). It is the third "*Gingles*" factor. Therefore, every city involved in Section 2 lawsuit that reaches the remedial phase must, by definition, have had racially polarized voting. If Plaintiff's logic were correct, then no city would be able to utilize at-large seats in any remedial plan. But this is simply not the case. *See NAACP v. Kershaw County*, 838 F. Supp. 237, 241 (D.S.C. 1993) ("[L]egislatively-proposed mixed plans are not *per se* violative of Section 2; to the contrary, they are acceptable."); *Citizens for Good Gov't v. City of Quitman*, 148 F.3d 472, 476 (5th Cir. 1998) ("[R]eapportionment plans prepared by legislative bodies may employ multimember [or at-large] districts.'") (quoting *McDaniel v. Sanchez*, 452 U.S. 130, 139 (1981)). At-large seats are permissible in legislatively crafted plans. *Id.* Accepting Plaintiff's argument that the existence of racially-

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 11

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

polarized voting precludes any use of an at-large district runs afoul established precedent.

The existence of racially polarized voting, with nothing more, does not preclude the use of an at-large seat in a remedial plan. As long as the at-large seat is not included to diffuse minority voting strength and the plan provides a complete remedy (*i.e.*, providing proportional opportunities to elect the candidate of choice), then the use of an at-large seat is permitted.

### IV.   CONCLUSION

The City's plan provides a complete remedy to the Voting Rights Act Section 2 violation and does not create any new violations of the law. Therefore, the law requires that the Court give deference to and adopt the legislatively created plan without consideration of any other remedial plans proposed.

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 12

FLOYD, PFLUEGER & RINGER P.S.
200 West Thomas Street, Suite 500
Seattle, WA 98119
Tel 206 441-4455
Fax 206 441-8484

RESPECTFULLY SUBMITTED this 1st day of November, 2016.

By:    s/ John A. Safarli
John Safarli, WSBA #44056
jsafarli@floyd-ringer.com
Casey M. Bruner, WSBA #50168
cbruner@floyd-ringer.com
Floyd, Flueger & Ringer, P.S.
200 West Thomas St Ste 500
Seattle, Washington 98119-4296
Telephone: (206) 441-4455
Facsimile: (206) 441-8484

By:    s/ Leland B. Kerr
Leland B. Kerr, WSBA #6059
lkerr@kerrlawgroup.net
Kerr Law Group
7025 W. Grandridge Blvd., Suite A
Kennewick, Washington 99336
Telephone: (509) 735-1542
Facsimile: (509) 735-0506

*Attorneys for Defendants*

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 13

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119
TEL 206 441-4455
FAX 206 441-8484

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Emily Chiang | echiang@aclu-wa.org, ewixler@aclu-wa.org |
| La Rond Baker | lbaker@aclu-wa.org, ewixler@aclu-wa.org |
| Breanne Schuster | bschuster@aclu-wa.org, breanne.schuster@gmail.com |
| Brendan V. Monahan | bvm@stokeslaw.com, debbie.wilson@stokeslaw.com, lori.busby@stokeslaw.com, stephanie.salinas@stokeslaw.com |
| Leland B. Kerr | lkerr@kerrlawgroup.net, kdebevec@kerrlawgroup.net |
| Cristin J Aragon | caragon@yarmuth.com |
| Gregory P Landis | glandis@yarmuth.com, vskoulis@yarmuth.com |
| John A. Safarli | jsafarli@floyd-ringer.com, jjimenez@floyd-ringer.com |
| Casey M. Bruner | cbruner@floyd-ringer.com, jjimenez@floyd-ringer.com |

By:   John A. Safarli
       WSBA No. 44056

DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED REMEDIAL PLAN - 14

FLOYD, PFLUEGER & RINGER P.S.
200 West Thomas Street, Suite 500
Seattle, WA 98119
Tel 206 441-4455
Fax 206 441-8484