1

THE HONORABLE LONNY R. SUKO

2

Emily Chiang, WSBA No. 50517
La Rond Baker, WSBA No. 43610
AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
(206) 624-2184
echiang@aclu-wa.org, lbaker@aclu-wa.org

Brendan V. Monahan, WSBA No. 22315
Jaime Cuevas, Jr., WSBA No. 51108
STOKES LAWRENCE VELIKANJE MOORE & SHORE
120 N. Naches Avenue
Yakima, Washington 98901-2757
(509) 853-3000
Brendan.Monahan@stokeslaw.com, Jaime.Cuevas@stokeslaw.com

Gregory Landis, WSBA No. 29545
Cristin Kent Aragon, WSBA No. 39224
YARMUTH WILSDON PLLC
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
Telephone: (206) 516-3800
caragon@yarmuth.com, glandis@yarmuth.com

*Attorneys for Plaintiff, Bertha Aranda Glatt*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

19

20

21

22

23

24

| | |
|---|---|
| BERTHA ARANDA GLATT, | Case No. 4:16-CV-05108-LRS |
| Plaintiff, | PLAINTIFF'S REPLY TO DEFENDANTS RESPONSE TO PLAINTIFFS' PROPOSED REMEDIAL PLAN |
| v. | |
| CITY OF PASCO, *et al.*, | |
| Defendants. | With oral argument: December 7, 2016 at 1:00 PM |

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

I.      INTRODUCTION ........................................................................1

II.     ARGUMENT...............................................................................2

        A.      The City's Proposed Plan Fails to Completely and Fully Remedy the
                Unlawful Dilution of the Latino Vote ....................................2

        B.      Plaintiff's Proposed Plan Effectively Remedies the Section 2
                Violation ...............................................................................7

        C.      Plaintiff's Remedial Plan Completely Remedies the Vote Dilution
                Now ........................................................................................8

        D.      Intent Is not the Test for a Lawful Remedy ........................10

III.    CONCLUSION...........................................................................10

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

# TABLE OF AUTHORITIES

## Cases

*Buchanan v. City of Jackson, Tennessee,*
   683 F. Supp. 1537 (W.D. Tenn. 1988) .................................................................7

*Chapman v. Meier,*
   420 U.S. 1 (1975)....................................................................................................4

*Dillard v. Crenshaw Cnty., Alabama,*
   649 F. Supp. 289 (M.D. Ala. 1986) ......................................................................4

*Montes v. City of Yakima,*
   No. 12-cv-3108, 2015 WL 11120965 (E.D. Wash. Mar. 19, 2015)....................4

*Thornburg v. Gingles,*
   478 U.S. 30 (1986)........................................................................................ 2, 10

*Tovar v. United States Postal Service,*
   3 F.3d 1271 (9th Cir. 1993) ...................................................................................4

*United States v. Dallas County Commission, Dallas County, Alabama,*
   850 F.2d 1433 (11th Cir. 1988) .........................................................................4, 9

*United States v. Osceola County, Florida,*
   474 F. Supp. 2d 1254 (M.D. Fla. 2006).................................................................4

*Williams v. City of Texarkana, Arkansas,*
   861 F. Supp. 771 (W.D. Ark. 1993) ......................................................................4

## Statutes

42 U.S.C. § 1973 ............................................................................................... passim

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

# I.      INTRODUCTION

The City's claim that its insistence on retaining an at-large seat is a lawful resolution to the Section 2 claim is premised on three faulty arguments.  First, it asserts that its proposed hybrid plan completely remedies the Section 2 violations, even though the at-large position will continue to dilute the Latino vote for the foreseeable future.  Defendants' argument is unsupported by evidence, contradicted by the data Plaintiff's expert provides, and is not in alignment with case law. On top of these deficiencies, the City's proposed at-large seat is a critical swing seat that would remain off-limits to Latinos until at least 2021 even under Defendants' own analysis.

Second, the City contends that Latinos have a better opportunity over time to elect their candidate of choice for the at-large position than they would for Plaintiff's proposed influence district. This argument is also unsupported by the evidence, which instead makes clear that Defendants' plan fails to completely remedy the Section 2 violation. In contrast, Plaintiff's proposed remedy is buttressed by the stipulated existence of racially polarized voting in Pasco's city-wide elections, the nature of campaigning in smaller geographic districts compared to at-large districts, and socio-economic disparities that will make the cost of conducting an at-large campaign prohibitive for many Latino candidates.

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 1

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Finally, the City argues—without any support in the law—that a court should defer to a jurisdiction's proposed remedy as long as there is rough proportionality and a lack of concrete evidence that minority voter suppression was the plan's driving motivation. This argument is wholly inconsistent with the very purpose of the amended Voting Rights Act, 42 U.S.C. § 1973 ("VRA").[1]

Plaintiff does not contend that at-large seats are never permissible in Section 2 remedial plans. But here, Pasco is evenly divided between three majority Latino and three majority White seats; there is racially polarized voting in city-wide elections; and Plaintiff's proposed plan would provide Latinos with immediate influence in a fourth district whereas Defendants' plan would put an at-large seat out of the reach of Latinos for the foreseeable future. Under these circumstances, this Court should reject Defendants' proposed plan to maintain an at-large seat, and instead implement Plaintiff's proposed seven single-member district plan.

## II.    ARGUMENT

### A.    The City's Proposed Plan Fails to Completely and Fully Remedy the Unlawful Dilution of the Latino Vote

Although the City has admitted that racially polarized voting in Pasco has

---

[1] There is no requirement that a plaintiff prove intentional discrimination to make a *prima facie* showing of a Section 2 violation. Further, in *Thornburg v. Gingles*, 478 U.S. 30 (1986), it was emphasized that the Act contains no such requirement.

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 2

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

resulted in the dilution of the Latino vote, it requests that this Court allow it to retain an at-large position.[2] Retention of an at-large seat on Pasco's City Council would continue the very dilution of the Latino vote that the City admitted exists and that was the root cause of the Section 2 violation in Pasco.

As the Partial Consent Decree recognizes, racially polarized bloc voting in Pasco's at-large elections deprived the Latino community of an opportunity to meaningfully participate in the election process and made it impossible for Latinos to elect a candidate of their choice. Dkt. 16 at 8. Simply put, reducing the number of at-large seats from seven to one does not fully eliminate the dilution of the Latino vote—and Plaintiff is entitled to a full remedy under Section 2.

Because Latinos are effectively barred from meaningful participation in the election of any at-large seat in Pasco, this Court should follow in the footsteps of the many courts before it that have rejected proposed remedial plans where the inclusion of at-large seats does not completely remedy the underlying vote

_____

[2] In their response brief, Defendants did not argue for staggered implementation of the new election system.  However, it should be noted that staggered implementation would result in the disenfranchisement of a significant number of Pasco voters by effectively barring them from voting in City Council elections for six (6) years. 2d Supp. Cooper Decl. at ¶¶7-12.

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 3

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1   dilution. *See, e.g.*, *United States v. Dallas County Comm'n, Dallas County, Ala.*,

2   850 F.2d 1433, 1439-40 (11th Cir. 1988); *Montes v. City of Yakima*, No. 12-cv-

3   3108, 2015 WL 11120965, at *2 (E.D. Wash. Mar. 19, 2015); *Dillard v. Crenshaw*

4   *Cnty., Ala.*, 649 F. Supp. 289, 296 (M.D. Ala. 1986); *Williams v. City of*

5   *Texarkana, Ark.*, 861 F. Supp. 771, 772 (W.D. Ark. 1993); *Chapman v. Meier*, 420

6   U.S. 1, 21 (1975); *United States v. Osceola Cnty., Fla.*, 474 F. Supp. 2d 1254,

7   1256 (M.D. Fla. 2006).

8        Further, Defendants contend—without evidence—that Latinos will be the

9   majority of registered voters by 2021 and will then be able to elect or influence the

10  election of a candidate for the remaining at-large seat. Dkt. 25 at 23. This argument

11  rests on a thin reed: Defendants' demographer's opinion that Latinos currently are

12  44% of registered voters. *Id.*

13       That opinion is built upon sand. First, Defendants have failed to provide any

14  of the registered voter data on which they purport to rely. *See id.* at 15, n.18, Dkt.

15  30 at 5, n.3. Instead, the City has repeatedly promised the Court that such data is

16  forthcoming and that its expert is still formalizing his analysis. *Id.* Under well-

17  established Ninth Circuit precedent, the City's failure to provide data-driven or

18  demographic evidence in support of its proposed plan cannot be remedied by

19  introducing evidence in a reply brief. *See Tovar v. U.S. Postal Serv.*, 3 F.3d 1271,

20  1273 n.3 (9th Cir. 1993) (striking evidence presented for the first time in reply).

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 4

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Second, the demographic assertions regarding Latino Citizen Voting Age Population ("LCVAP") and registered voter trends on which the City so heavily relies are highly suspect. *Compare* Dkt. 30 at 10, *with* 2d Supp. Cooper Decl. at ¶¶13-16. *See generally* Dkt. 28.  Further, in his Supplemental Declaration, Plaintiff's expert, William Cooper, addresses the many shortcoming of Defendants' demographer's assertions regarding population trends in Pasco including that: (1) Defendants' reliance on 1-year American Community Survey ("ACS") estimates for LCVAP is problematic because (unlike 5-year estimates) 1-year estimates have large margins of error when used in smaller jurisdictions like Pasco; (2) Defendants overinflate the Latino registered voter population; and (3) Defendants' assertions regarding future population trends are predicated on statistics from the Pasco School District, which is not coextensive with the City of Pasco's boundaries. *See generally* Dkt. 28.

Finally, even if the City's demographic assertions regarding LCVAP and Latino registered voter populations could be taken as true, the at-large seat would be wholly out of reach to the Latino population at least until 2021—five years from now. *See* Dkt. 25 at 2 ("[A]s Latinos inevitably grow to a citywide majority of eligible voters, the at-large seat will provide Latinos across the City with an opportunity to elect their candidate of choice."); *id.* at 23.

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 5

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1   The problems with the City's proposed at-large seat are compounded by one

2   additional, crucial fact: in both proposed plans, Pasco is evenly split between three

3   majority-Latino and three majority-White districts. The at-large seat Defendants

4   propose would not only result in the continued dilution of the Latino vote (for the

5   reasons listed above) but would also deprive Latinos of a meaningful opportunity

6   for the foreseeable future to elect a candidate to the critical swing seat. In matters

7   on which the Latino and White populations have different perspectives, the

8   deciding vote would belong to the at-large seat even though, due to racially

9   polarized voting and the vast geographic terrain covered in at-large elections,

10  Latinos will be foreclosed from that position for many years to come. The at-large

11  seat thus not only fails to remedy the vote dilution, it perpetuates it.

12      The end result, as Plaintiff's expert explains, is that the City's new at-large

13  position will operate just like its old at-large positions, which is to say it will

14  exclude Latinos from being able to fully participate in the political process in

15  Pasco. Dkt. 24 at ¶¶58-63. In fact, Defendants seem to admit that their proposed

16  plan does not fully remedy the vote dilution and bars Latinos from full

17  participation in the electoral process. *See* Dkt. 25 at 2, 23. Even so, Defendants still

18  ask this Court to overlook the continued dilution of the Latino vote because, by

19  their count, it would only persist for at least another five (5) years. This denial of

20  relief is clear evidence that Defendants' proposed plan does not fully and

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 6

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

completely remedy the vote dilution and it stands in marked contrast to Plaintiff's

proposed plan, provides for immediate removal of the dilutive effect of at-large

voting in Pasco. Because Defendants' proposed plan does not provide a full and

complete remedy of the Section 2 violation this Court owes it no deference.

*Buchanan v. City of Jackson, Tenn.*, 683 F. Supp. 1537,  1541 (W.D. Tenn. 1988).

*See also* Dkt. 27 at 2-5.

**B.      Plaintiff's Proposed Plan Effectively Remedies the Section 2 Violation**

The City doubts whether Plaintiff's proposed District 5 will provide the

City's Latino community with a "reasonable opportunity to elect its preferred

candidate," claiming the LCVAP for District 5 is marginally lower than the

citywide LCVAP. Dkt. 30 at 4. Defendants' doubt arises from their assertion that

"the City's at-large position is much more Hispanic-influenced than the Plaintiff's

next closest district" because Plaintiff's proposed District 5 is 28.98% LCVAP

whereas "according to the 2015 1-year American Community Survey ("ACS"), the

citywide LCVAP is 38.5%[.]" Dkt. 30 at 10.

However, Defendants are comparing apples and oranges. The LCVAP

statistic that Defendants use for Plaintiff's proposed District 5 is from the 5-year

ACS estimates, which is the statistic that should be used when attempting to

determine LCVAP. But when Defendants proffer an LCVAP for the City of Pasco,

they rely upon 1-year ACS estimates. Because these two sets of population

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 7

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

estimates are very different, Defendants' argument that Plaintiff's proposed

District 5 has a significantly lower LCVAP than the citywide LCVAP is both

flawed and inappropriate. 2d Supp. Cooper Decl. at ¶¶13-14. In fact, when using

the same population estimates, Plaintiff's proposed District 5 and the City of Pasco

currently have comparable LCVAPs. *Id.* at ¶16. Further, historical trends indicate

that Plaintiff's District 5 is likely to maintain or exceed the citywide LCVAP over

the next decade and will remain a viable influence district. Dkt. 24 at ¶47.

**C.     Plaintiff's Remedial Plan Completely Remedies the Vote Dilution Now**

Plaintiff's proposed seven single-member district plan affords a full remedy

to the Section 2 violation because it allows both Whites and Latinos to have a

meaningful opportunity to influence the election of the seat on the Council that is

neither a majority Latino nor White district. There are a number of reasons Latinos

have an opportunity to influence or win elections in Plaintiff's proposed District 5

but not in an at-large election.

First, a district is a limited geographic region that allows district residents a

better opportunity to get to know candidates than in a citywide election. Dkt. 24 at

¶60. Second, members of a more limited geographic region are more likely to find

common ground across race precisely because they share common interests driven

by geography: their children attend the same schools and play in the same parks,

they use the same libraries and roads, and they walk under the same streetlights.

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

Third, smaller geographic areas mean lower campaign costs and allow candidates to focus campaign efforts on a particular community. Dkt. 24 at ¶¶60-62. Fourth, the cost of campaigning citywide can be a substantial barrier for Latino candidates given the marked socio-economic differences between the Latino and the White communities in Pasco.[3] Finally, district based elections are known to benefit communities that have been excluded from electoral politics because of vote dilution. *Dallas County Comm'n*, 850 F.2d at 1439-40. Plaintiff's proposed District 5 provides Latino voters with a meaningful opportunity to elect a candidate of their choice, allowing them to convey their messages to a distinct and accessible voting base. Dkt. 24 at ¶¶60-62.

In sum, the one difference in the Defendants' and Plaintiff's competing plans makes all the difference: Plaintiff's influence district provides a meaningful opportunity for a Latino to win election *now* and in the future. Defendants' at-large seat does not. And what makes this distinction critical is that this seventh seat on the Council will often be the decisive vote in matters where the Latino and White population disagree. Plaintiff's position is not that at-large districts are never permissible in Section 2 remedial plans. But on the facts of this case, the City's inclusion of an at-large swing seat must be rejected.

---

[3] Latino citizens of Pasco earn approximately half as much as their non-Latino White neighbors. Dkt. 24 at 65.

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 9

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

**D.      Intent Is not the Test for a Lawful Remedy**

3            The City persists in arguing that including one at-large seat in its remedial

4

5      plan is acceptable so long as it is not included "to diffuse minority voting

6      strength." But as Plaintiff demonstrated in her Response Brief, the two cases Pasco

7      cites for this proposition do not support it. Dkt. 27 at 13-16. Moreover, Pasco fails

8      to provide any actual evidence that the listed "policy objectives" for including an

9      at-large position, Dkt. 30 at 7-8, were in fact the basis for the City's hybrid plan.

10           But even if the City could establish that its intent was pure, the issue of

11     intent is irrelevant. *See Thornburg*, 478 U.S. at 43-44 (affirming that intent is not

12     required to sustain a Section 2 claim). It would stand Section 2 on its head to

13     require that a defendant's proposed remedial plan be accepted, even if it failed to

14     end discriminatory effects, absent a finding that the plan was infected by overt

15

16     discriminatory intent.  To ensure that appropriate remedies are implemented, the

17     judiciary must adopt plans that fully and completely end the discriminatory effects

18     of vote dilution, regardless of the presence or absence of discriminatory intent.

19

20                                **III.      CONCLUSION**

21           For the foregoing reasons Plaintiff respectfully requests that the Court reject

22     Defendants' proposed remedy and adopt Plaintiff's proposed remedial plan.

23           DATED this 15th day of November, 2016.

24

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 10

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2

/s/La Rond Baker

Emily Chiang, WSBA No. 50517

3        echiang@aclu-wa.org
         La Rond Baker, WSBA No. 43610
4        lbaker@aclu-wa.org
         AMERICAN CIVIL LIBERTIES UNION OF
         WASHINGTON FOUNDATION
5        901 Fifth Avenue, Suite 630
         Seattle, Washington 98164
6        Telephone: (206) 624-2184

7        /s/Brendan V. Monahan

8        Brendan V. Monahan, WSBA No. 22315
         Brendan.Monahan@stokeslaw.com
9        Jaime Cuevas, Jr., WSBA No. 51108**
         Jaime.Cuevas@stokeslaw.com
10       STOKES LAWRENCE VELIKANJE MOORE &
         SHORE
11       120 N. Naches Avenue
         Yakima, Washington 98901-2757
12       Telephone: (509) 853-3000

13       /s/Gregory Landis

14       Gregory Landis, WSBA No. 29545
         glandis@yarmuth.com
15       Cristin Kent Aragon, WSBA No. 39224
         caragon@yarmuth.com
16       YARMUTH WILSDON PLLC
         1420 Fifth Avenue, Suite 1400
17       Seattle, Washington 98101
         Telephone: (206) 516-3800

18       **Admission to E.D. Wash. Pending**

19
         *Attorneys for Plaintiff, Bertha Aranda Glatt*
20

21

22

23

24

PLS.' REPLY TO DEFS.' RESPONSE TO PLS.'
PROPOSED REMEDIAL PLAN - 4:16-CV-05108-LRS - 11

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on November 15, 2016, I caused the foregoing document to be:

3

4

☒    electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

5

6

7

8

9

| | |
|---|---|
| Emily Chiang | echiang@aclu-wa.org |
| Brendan V. Monahan | Brendan.Monahan@stokeslaw.com |
| Jaime Cuevas, Jr. | Jaime.Cuevas@stokeslaw.com |
| Cristin Kent Aragon | caragon@yarmuth.com |
| Gregory Landis | glandis@yarmuth.com |
| Leland Barrett Kerr | lkerr@kerrlawgroup.net |
| John A. Safarli | jsafarli@floyd-ringer.com |
| Casey M. Bruner | cbruner@floyd-ringer.com |

10

11

/s/La Rond Baker

La Rond Baker, WSBA No. 43610
lbaker@aclu-wa.org
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184

12

13

14

15

16

17

18

19

20

21

22

23

24

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184